## Harry Channon, Appellee, v. H. Channon Company et al., Appellants.

### Gen. No. 24,952.

1. CORPORATIONS, § 162*—*what is extent of power of directors as to dividends.* As a general rule, the action of the board of directors of a corporation in refusing to declare a dividend is final, and their discretion in this regard will not be interfered with by a court of equity in the absence of bad faith or arbitrary or unjustifiable conduct.

2. CORPORATIONS, § 162*—*what is extent of power of court to declare dividends.* The power of a court of equity to order the directors of a trading corporation to declare and pay a dividend from the unused profits when they have improperly refused to do so is undoubted.

3. CORPORATIONS, § 162*—*when declaration of dividends will be enforced.* Where the evidence shows that a corporation is transacting a large and profitable business and is amply able to pay the dividend decreed without in any way impairing its financial condition, the refusal of the directors to declare and pay a dividend is arbitrary, and a decree directing the payment thereof will be sustained.

Appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1919. Affirmed. Opinion filed June 2, 1920.

WILLIS MELVILLE and ALBERT N. POWELL, for appellants.

MORRILL, SHANNON & TRISKA, for appellee; DONALD L. MORRILL and NAHUM MORRILL, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Harry Channon, a stockholder of the H. Channon

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Company, a corporation, filed his bill in this case against the corporation and the directors of it praying that an account of the financial condition of the company be had and a cash dividend declared. Complainant contended that the action of the board of directors in refusing to pay a dividend was unjustifiable and arbitrary. The case was referred to the master who took the evidence and reported that the company was in good financial condition; that its financial ability to pay a dividend was admitted, and that the refusal of the directors to declare a reasonable dividend was arbitrary, unjustifiable, and a denial of the right of minority stockholders to share in the profits of the company.

He recommended that a decree be entered as prayed for requiring the payment of a 10 per cent cash dividend. The findings and recommendations of the master were approved by the chancellor and a decree entered accordingly, to reverse which the corporation and two of the directors prosecute this appeal.

The record discloses that defendant company was incorporated January, 1883, with a capital stock of $100,000, divided into 1,000 shares of the par value of $100 each. The object of the corporation was to manufacture rigging, sails, canvas goods and other merchandise usually dealt in by ship chandlers; that in April, 1913, the capital stock was increased to $1,000,000, divided into 10,000 shares of the par value of $100 each; that from the time of the incorporation of the company down to the present it has been engaged in the business for which it was incorporated. The stock of the company is substantially all held by the Channon family as follows: Henry Channon, the father, 5,400 shares; Elizabeth Channon, his wife, 819 shares; the complainant, Harry Channon, a son, 981 shares; James H. Channon, a son, 781 shares; Mrs. Grace C. Bortell, a daughter, 819 shares. John L. Hanley, the secretary of the company, owns 50 shares.

Employees of the company own 310 shares, and 840 shares are in the treasury of the company unissued. It appears that the business was founded by the father and that he has always been the dominating factor of it although at the time of the hearing he was about 82 years old. He is president, treasurer and a director of the company. John L. Hanley is the secretary and also a director. James H. Channon is the other director. Cash dividends have been declared and paid as follows: 1911, 10 per cent; 1912, 15 per cent; 1913, 4 per cent; 1914, 2 per cent, making a total of $85,000 paid in dividends. On January 15, 1917, a meeting of the board of directors was held. James H. Channon moved that a dividend be declared at such rate as the directors should consider reasonable. The motion was defeated without any discussion by the votes of Henry Channon and Hanley, the secretary. On February 6 following the bill was filed.

There is no dispute as to the financial standing of the company as shown by the balance sheet of January 1, 1917, from which it appears that the company had on that date in cash, $151,287.81. The company owns real estate valued at $113,769.38. In the statement there is shown a reserve of $75,000 for depreciation of stock on hand, and also a reserve of $100,000 for a building fund; that the net sales for the year 1916 amounted to $2,115,573.49, and the net profits for that year were $341,215.85. On December 31, 1916, the company had on hand merchandise valued at $526,497.45; that it owed current bills amounting to $66,626, and also $41,227.24 to Henry Channon, which he had left in the company's treasury for several years and for which he was paid interest. The evidence tended to show that there was a turnover of the merchandise two or three times per year; that there was no justification for the $75,000 reserve for depreciation; that such reserve had never been made before and instead of any decrease in the value of the goods

on hand, they had increased and would continue to increase in value. In reference to the $100,000 reserve for the building fund, the court found that while there had been some talk of procuring a new site nothing had been done in this regard for the past 3 or 4 years. The evidence also tends to show that the real estate held by the firm, although in the name of Henry Channon, had been so held for a number of years contrary to the statute of this State, and that it could be sold for $100,000.

It is the theory of the complainant that the reserve of $75,000 for depreciation of the stock on hand, and of $100,000 for a building fund was simply a subterfuge to avoid the payment of a dividend. There is evidence that the father, Henry Channon, who dominated the conduct of the business, had stated that he would never declare any further dividend while he lived, and that Hanley, a director, was completely dominated and controlled by him. Defendant's position is that the question whether a dividend should be declared rests in the discretion of the board of directors, and in the absence of proof of fraud or breach of trust a court of equity is without power to decree the payment of a dividend. As a general proposition, the action of the board of directors in refusing to declare a dividend is final, and such discretion will not be interfered with by a court of equity in the absence of bad faith or arbitrary or unjustifiable conduct. *Cratty v. Peoria Law Library Ass'n,* 219 Ill. 516. But the power of a court of equity to order the directors of a trading corporation to declare and pay a dividend from the unused profits when they have improperly refused to do so is undoubted. *Laurel Springs Land Co. v. Fougeray,* 50 N. J. Eq. 756; *Scott v. Eagle Fire Ins. Co.,* 7 Paige (N. Y.) 198; Morawetz on Corporations (2nd Ed.), sec. 447; 2 Clark & Marshall on Corporations, sec. 517; 6 Fletcher's Cyclopedia of Corporations, sec. 3656. A trading corporation is organ-

ized and carried on primarily for the profit of the stockholders and it would be a strange rule indeed if the board of directors could arbitrarily refuse to pay dividends when the financial condition of the company would warrant it. In the instant case there is outstanding 9,160 shares of stock of the par value of $916,000, 10 per cent of which is $91,600. Upon a consideration of the entire record we find that it is undisputed that the company was transacting a large and lucrative business. There is no dispute that it was amply able to pay the dividend decreed without in any way impairing its financial condition. We think the refusal of the board of directors to declare and pay a dividend was unjustifiable and arbitrary. In these circumstances a court of equity may intervene to compel the directors to declare and pay a dividend as was done in the instant case.

The decree of the superior court of Cook county is affirmed.

*Affirmed.*

THOMSON, P. J. and TAYLOR, J., concur.