DETERMINED IN THE

## FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEARS 1925 AND 1926.

John F. Sullivan, Appellee, v. Edward Hines Lumber Company et al., Appellants.

### Gen. No. 29,920.

1. CORPORATIONS—*appropriation of surplus to trustees for formation of subsidiary corporations as declaration of dividend.* The adoption of a resolution by the stockholders of a corporation appointing a committee of stockholders authorized to acquire the stock of another corporation and to form additional corporations in such other states as the committee deemed advisable, the committee to hold all of such stock in trust for the stockholders of the parent corporation, and directing the officers of the corporation to appropriate out of the surplus funds of the corporation sufficient funds to accomplish the purposes aforesaid, followed by action by the directors of the corporation as provided in such resolution, held not equivalent to the declaration of a dividend among the then stockholders of the corporation, so as to exclude from an interest in the corporations thus acquired and formed and the trust estates in their property thereafter created, one who became a stockholder of the parent corporation subsequent to the adoption of such resolutions.

2. TRUSTS—*personal representatives and heirs of deceased cotrustee as necessary parties in suit to set aside declarations of trust.* On a suit to set aside a settlement agreement and two declarations of trust wherein one of the trustees was made a defend-

**1**

Sullivan v. Edward Hines Lumber Co., 239 Ill. App. 1.

ant both as trustee and in his individual capacity, the court was not precluded from entering a final decree for want of necessary parties because the personal representatives and heirs of such trustee were not made parties following his death after filing answer, where by the terms of such agreement and declarations of trust the duties of the said trustee, upon his death, devolved upon the surviving trustees, and he was not a necessary party in his individual capacity, his individual interest being fully protected by the corporation of which he was a stockholder.

3. TRUSTS—*coheirs of deceased stockholder as necessary parties in suit to set aside declaration of trust executed prior to acquisition of stock by complainant's ancestor.* The court was not precluded by a want of necessary parties from entering a final decree in the suit of a stockholder of a corporation to set aside a settlement agreement and two declarations of trust executed pursuant to resolutions of the stockholders prior to the acquisition of such stock by the father of such stockholder, on the ground that complainant's coheirs to the stock were not made parties, where complainant acquired such stock by descent and by assignment from his coheirs, the adoption of the resolutions aforesaid not being equivalent to the declaration of a dividend among the then stockholders of the corporation so as to exclude complainant's ancestor from an interest as stockholder in the trust estates so created.

4. TRUSTS—*sufficiency of bill to show grounds for setting aside trust agreement not binding upon complainant.* A settlement agreement for the formation of a Massachusetts trust to operate the business of a lumber company and certain subsidiary corporations formed by trustees of the stockholders of the lumber company pursuant to authority conferred by prior declarations of trust, executed by the trustees under such declarations of trust and by all of the stockholders of the lumber company except complainant, who refused assent thereto, even if not binding upon complainant, will not be set aside by a court of equity on his application, where it appears that the settlement agreement has operated for a considerable period to the manifest advantage of the corporations and stockholders concerned, including complainant, where there is no claim that the execution of the agreement was ultra vires the corporation, where there is no claim of fraud or want of good faith, and where the complainant is not free from laches.

5. EQUITY—*amendment of bill so as to ask relief inconsistent with theory of original bill.* Where complainant in a suit to set aside a settlement agreement and two declarations of trust involving the property of a corporation of which he was a stockholder predicated his right to the relief sought upon the theory that the resolutions of the stockholders pursuant to which such

declarations of trust were executed, were valid and binding upon him, it was not error for the court to deny his application to so amend his bill as to ask that such resolutions be declared null and void.

Appeal by defendants from the Superior Court of Cook county; the Hon. Charles M. Foell, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1924. Reversed and remanded. Opinion filed December 2, 1925. Rehearing denied December 17, 1925.

Newman, Poppenhusen, Stern & Johnston, for appellant Edward Hines Lumber Co.; Jacob Newman, Edward R. Johnston and Henry Jackson Darby, of counsel.

William S. Bennett, Homer J. Smith, Fisher, Boyden, Kales & Bell, for other appellants; Clapp, Richardson, Elmquist, Briggs & Macartney, A. W. Clapp and Laird Bell, of counsel.

McCormick, Kirkland, Patterson & Fleming, for appellee; Charles F. Rathbun, Robert N. Golding and J. B. Martineau, of counsel.

Mr. Justice O'Connor delivered the opinion of the court.

By this appeal the defendants seek to reverse a decree of the superior court of Cook county entered on the 19th of July, 1924, whereby three documents each dated January 1, 1918, one of which is designated as a settlement agreement and the other two as declarations of trust, were held to be null and void, because complainant had not signed or consented to them. Complainant has assigned cross errors on the failure of the chancellor also to set aside two certain resolutions dated May 8, 1902, and January 16, 1904.

The record discloses that complainant, the owner of ten shares of the capital stock of the Edward Hines Lumber Company, is a resident of Los Angeles, Cali-

fornia, and the defendant, the Edward Hines Lumber Company, is an Illinois corporation, organized April 9, 1897, with a capital stock of $300,000 which was divided into 3,000 shares each of the par value of $100; that the duration of the company was for a period of five years. Its charter having expired on April 8, 1902, it continued to do business until it was reorganized June 6, 1902. From the date of its incorporation it has been engaged in the lumber business. It further appears that complainant's father, J. B. Sullivan, for many years had been employed by the lumber company and in order to retain his services, Edward Hines, president of the lumber company, on January 2, 1903, entered into an agreement with Sullivan, whereby Hines was to sell Sullivan ten shares of stock in the lumber company then owned by Hines for $1,000 per share, the stock at that time having a value of about $1,400 per share. Sullivan did not have sufficient money to pay for the stock at once but made payments from time to time until he had paid for it in full, the last payment being April 18, 1904. He died July 30, 1904, leaving three sons who inherited the stock. Complainant's two brothers assigned their interest in the stock to him and he became the owner of record of the ten shares October 10, 1906. The lumber company grew and prospered. Some dividends were paid but most of the surplus was turned over by the lumber company to certain trustees and by the latter invested for the benefit of the lumber company in the operation of its business.

On May 6, 1902, at a meeting of all the stockholders of the lumber company, a resolution was unanimously adopted, wherein it was recited that it was desirable for the stockholders of the company to own and control the manufacturing plant of the Lumbermen's Mill Company and to operate that mill as an adjunct to the lumber company's business; that it was also desirable for the stockholders to organize various corporations

and to operate them as auxiliaries to the lumber company's business, and that it was further desirable for the stockholders to purchase stock of other corporations, and it was resolved that Edward Hines, L. L. Barth and C. F. Wiehe be appointed a committee of the stockholders and authorized and directed to purchase the capital stock of the Lumbermen's Mill Company and hold the same in trust for the stockholders of the lumber company; to purchase for the stockholders of the lumber company all or part of the capital stock of such corporations as in the judgment of the committee might be advisable and to hold the same in trust for the stockholders of the lumber company; to incorporate manufacturing and other companies in such states as the committee might deem advisable and for the best interests of the stockholders of the lumber company and to hold such stock in trust for the lumber company's stockholders. The officers of the lumber company were authorized and directed to set aside and appropriate on demand of the committee, out of the surplus fund of the lumber company, sufficient funds for such purposes. The committee was given power to fill any vacancies in its membership for any cause, and it was also authorized to decrease or add to its membership. Afterwards and on the same day the board of directors of the lumber company met and the president submitted the resolution adopted that day by the stockholders, and a resolution was passed by the directors instructing the officers to set aside and pay over sufficient funds to the committee of three as might be required, as provided for in the resolution, passed by the stockholders.

On February 3, 1903, the annual meeting of the stockholders was held and, apparently for the reason that the lumber company had received its new charter after the resolution of May 6, a resolution was adopted ratifying and confirming the resolution of May 6, 1902. Afterwards on June 16, 1904, the stockholders' annual

meeting was held, at which time the entire capital stock of the company was represented and a resolution was adopted wherein it was stated that it was desirable and for the best interests of the lumber company to acquire timberlands where it could profitably be done with the surplus, rather than to distribute such surplus in cash; and that there were large tracts of timberlands offered for sale in Mississippi and adjacent states, which it would be to the best interests of the lumber company to acquire. It was there resolved that Edward Hines be appointed trustee for the stockholders of the lumber company; and he was authorized and directed to purchase, for the benefit of the stockholders of the lumber company, timberlands and other property to the extent of $4,000,000 and was given full power to make contracts and take title in his individual name, but he was to hold such timberland and other property in trust for the benefit of the lumber company's stockholders and the officers of the lumber company were directed to set aside and appropriate out of its surplus funds $4,000,000, $3,000,000 of which was to be taken out of the present surplus and $1,000,000 to be taken out of the surplus for the next year, 1905. Afterwards, on the same day, the directors of the lumber company met and the officers of the lumber company were then instructed to set aside and pay out of the surplus funds to Edward Hines, a sum not exceeding $4,000,000 which was to be used by him in the purchase of timberlands and other property to be held in trust by Hines for the stockholders of the lumber company.

It further appears from the record that under the resolution of May 6, 1902, the lumber company advanced moneys to Hines, Barth and Wiehe, as trustees, until December 31, 1910, the total amount of such advances being $3,845,673.73; that under the resolution of January 16, 1904, there was advanced to Hines, trustee, a total of $3,571,514.86, the last of such ad-

vances being made December 31, 1910. These moneys were invested by the trustees and there is no contention that such investments were not wisely made. On the contrary, it seems to be conceded that the lumber company and consequently its stockholders have been greatly benefited by what the trustees did.

Sometime prior to January 1, 1918, it was thought by the management of the lumber company that the title to its property, much of which was located in other states, was not in a satisfactory condition, and to remedy this counsel for the lumber company prepared an elaborate agreement which was, in effect, what is known as a Massachusetts common-law trust. This agreement was executed by the lumber company, by the trustees under the resolutions of May 6, 1902, and January 16, 1904, and by all of the stockholders of the lumber company, except complainant. It is designated as the settlement agreement. The agreement by its terms appointed Hines, Barth, and Wiehe, trustees of two trusts designated as Edward Hines Yellow Pine Trust, and the Lumber Investment Association. And the three trustees executed two declarations of trust, one in the Edward Hines Yellow Pine Trust and the other in the Lumber Investment Association, each dated January 1, 1918.

The settlement agreement was not executed by all of the parties on January 1, 1918, but it took some six weeks to secure the signatures of the parties, some of them being located in states outside of Illinois. After this was done, Wiehe went to Los Angeles to see complainant for the purpose of securing his signature to the settlement agreement. This was done after correspondence had passed between complainant in Los Angeles and Wiehe, who was in Chicago; but it appears that when Wiehe went to Los Angeles, some difficulties arose between him and complainant. So that, as far as the record discloses, the nature of the settlement agreement was not explained to complain-

ant, and he never signed it. Afterwards, although the agreement was not executed by complainant, the lumber company and the trustees proceeded to carry out the terms· of the agreement. The trustees under the resolutions of 1902 and 1904 conveyed to the trustees under the agreement of January 1, 1918, immense tracts of timberlands and other property, including 7,768 shares, of the par value of $100 each, of the capital stock of the Edward Hines Pine Company, a Delaware corporation. Hines, Barth and Wiehe, as trustees under the 1902 resolution, owned all the capital stock of the Champion Lumber Company, an Illinois corporation, with assets of at least $5,000,000, and they transferred this stock to the trustees under the 1918 agreement. The lumber company conveyed to the trustees under the 1918 agreement some 50,000 acres of timberland situated in Mississippi, of the value of at least $3,000,000, and the record discloses that all of the property conveyed to the trustees under the agreement of 1918 was of the value of at least $10,000,000.

Complainant alleged in his bill (inter alia) that the trustees under the 1902 and 1904 resolutions made no distribution to the beneficiaries under those resolutions of any of the profits or proceeds of the trust property or assets and that this was in violation of such resolutions, and, therefore, complainant was entitled to an accounting from the trustees under the resolutions. It is further alleged that complainant had no knowledge of the execution of the settlement agreement and the two declarations of trust, dated January 1, 1918, until about the 6th of August, 1920; that although he was a stockholder of record of the lumber company, he received no notice of any annual or special stockholders' meeting, except in 1910, 1917, 1920. It was further alleged that Hines, Barth and Wiehe devised the 1918 agreement for the purpose of defrauding complainant out of his interests in the

property; that the conveyance and transfers of property pursuant to the 1918 agreement were made without consideration and a fraud upon complainant and the stockholders of the lumber company. The prayer was for an accounting and disposition of the trust funds and that complainant might be paid what was due him as shown by such accounting; that the trustees under the 1918 agreement be required to reconvey to the lumber company the Mississippi land of approximately 50,000 acres. And further the prayer was to the effect that all of the transfers of properties which were made pursuant to the 1918 agreement be vacated and set aside and that the settlement agreement and the two declarations of trust of 1918 be declared null and void.

The answer of certain defendants set up, among other things, that since the Edward Hines Lumber Company was organized June 6, 1902, and since neither complainant nor his father was a stockholder at that time, complainant never, in fact, had an interest in any of the property held by the trustees under resolutions of 1902 and 1904, but that such property was held by the trustees for the sole use and benefit of the persons who owned the stock in the old Hines Lumber Company, the charter of which expired in April, 1902, and, therefore, complainant had no interest in that property; that the $4,000,000 which the officers directed should be paid out of the lumber company's surplus on January 16, 1904, pursuant to the resolutions of the stockholders, was, in fact, the declaration of a dividend and belonged to the then stockholders of the lumber company; that since neither complainant nor his father owned any stock at that time, he had no interest in this surplus; and that in the preparation of the settlement agreement of 1918, it was erroneously assumed that complainant had an interest in the trust property under the 1902 and 1904 resolutions.

Considerable evidence was introduced before the chancellor at the close of which counsel for complainant asked leave to amend the prayer of his bill so as to pray that the resolutions of 1902 and 1904 be decreed to be null and void. The request was denied. It is stated in defendants' brief (although not shown by the record) that at the close of the evidence the chancellor stated that complainant might have an accounting if he so desired, but that complainant refused such offer. This is not denied in complainant's brief and the fact was substantially admitted on oral argument.

There was no attempt by complainant to prove any fraud on behalf of any of the defendants as he had alleged in his bill. Nor is there any intimation in this court that there was such fraud. On the contrary, it seems to be conceded that the business of the lumber company was honestly and ably conducted by the officers and trustees for the benefit of the lumber company and its stockholders, and that the assets of the company have been greatly increased by the manner in which the business was conducted.

1. It is contended that the court erred in holding that complainant had an interest in the trust estate created pursuant to the resolution of May 6, 1902, because that resolution was equivalent to the declaration of a dividend which belonged to the then stockholders and that neither complainant nor his father was a stockholder of the lumber company at that time. Numerous authorities are analyzed and discussed on this point, but any reference to this argument or the authorities we think would serve no useful purpose, because it is obvious that no dividend was declared by the resolutions of the stockholders, nor by the directors' meetings held May 6, 1902 and January 16, 1904, but the money was simply ordered turned over to the trustees for the purpose of investment and was at all times considered by all to be the property of the lumber company. The resolutions of the stock-

holders provided that the trustees purchase for the Edward Hines Lumber Company certain property and hold the same in trust for such stockholders. They also contained other provisions to the same import and the resolution of the directors passed on the same date was to the same effect. These resolutions clearly show that what was done bore no semblance to the declaration of a dividend, but the action taken was for the sole purpose of advancing the interests of the Hines Lumber Company and of its stockholders. It is clear that it was thought that this could be accomplished better by trustees than in the ordinary way by the corporation itself. The record discloses that since 1902 all of the officers, directors, stockholders, trustees and all parties in interest have been of the opinion and have acted on the theory that all property held by the trustees, either under the resolution of 1902 or 1904, belonged to and was the property of the Hines Lumber Company and of its stockholders; that they were of this opinion is shown by the settlement agreement of January 1, 1918. It is there stated that in the year 1902 and subsequent years, the lumber company had, undistributed, a surplus larger than was necessary for the conduct of its business and that at the meetings of the stockholders held in 1902 and 1904, action was taken by all of them directing that the lumber company should set aside and pay over to the trustees for the benefit of its stockholders such portions of its surplus as might from time to time be "profitably invested" in certain properties by the trustees, and be held in trust by them "for the benefit of the stockholders of the company." And it is further stated that the property invested and reinvested by the trustees was on behalf of and for the benefit of all the stockholders of the company, and the property held under the two trust agreements of 1902 and 1904 is specifically referred to and complainant is named therein as a stockholder having his pro rata interest

in the trust property. The first intimation that complainant had no interest in these trust funds or property appears when the answers of certain defendants were filed. It is clearly an afterthought and entirely without merit. It is clear that complainant, as a stockholder in the Hines Lumber Company is entitled to his proportionate share of the trust property held under the trust agreements of 1902, 1904 and 1918.

2. The defendants further contend that the court was without jurisdiction to proceed to a final decree, because of the absence of necessary parties (a) that since it appeared that defendant Wiehe had died after the filing of his answer, his personal representatives and his heirs should have been made parties and (b) that complainant's two brothers were necessary parties. We think neither of these contentions can be sustained. Wiehe was made a party defendant as trustee and in his individual capacity. Under the trust agreement of 1902, upon his death the duties devolved upon the surviving two trustees, Hines and Barth, and we think that he was not a necessary party to the bill in his individual capacity and any interest he might have in the property of the Hines Lumber Company was sufficiently protected by the lumber company, and since we have held that the action of the stockholders and directors taken in 1904 as shown by the resolutions was not the equivalent of the declaration of a dividend, there was no necessity for making complainant's two brothers parties. Defendants only contend that they were necessary parties on the theory that the action taken under the 1904 resolutions was equivalent to the declaration of a dividend. While we have held that the record discloses that complainant as a stockholder of the Hines Lumber Company is interested in the property held under the trusts of 1902 and 1904, according to the number of the shares of stock he owned, yet we are of the opinion that he is not entitled to have the two declarations of trust

and the settlement agreement, dated January 1, 1918, declared void. The learned chancellor held that they were null and void because neither of them was signed or consented to by complainant. The defendants did not contend that the settlement agreement of 1918 was binding upon complainant, and we shall assume that it was not. But this fact would not warrant a court of chancery in decreeing that it was null and void if to do so would work an injury to all of the parties including complainant.

The evidence shows that after the execution of the 1918 agreement, the trustees under the resolutions of 1902 and 1904 transferred to the trustees under the 1918 agreement immense tracts of lands and other property, including all of the shares of capital stock in the Champion Lumber Company, a Delaware corporation, with assets of more than $5,000,000; that the Hines Lumber Company conveyed to the trustees under the 1918 agreement more than 50,000 acres of land, and in all more than $10,000,000 of property had been transferred pursuant to the agreement of 1918. Since it appears without dispute that the transfer of all the property to the trustees mentioned in the 1918 agreement was of great benefit to the Hines Lumber Company and to all of its stockholders, including complainant (and there is no claim that it was ultra vires the corporation), it would be most inequitable and a great loss to all the stockholders, including complainant, to set aside all of such conveyances and transfers of property. Equity only decrees that which is right and just and never decrees that which would work an injustice to everybody concerned. While complainant says that he had greater rights under the resolutions of 1902 and 1904, we think they are not of such a character as would warrant a court in setting aside all that had been done under the 1918 agreement. Moreover, we think complainant is not free from laches, in that he took no steps to ascertain the terms of the

1918 agreement but apparently refused to let Wiehe explain the matter to him. He took no steps until 1920 when he employed a lawyer in Chicago to look into the matter at which time apparently all of the records of the lumber company were exhibited to his counsel. Then a suit was not brought until several months thereafter. It is undisputed that during a period from March to May, 1918, complainant knew that all of the stockholders had entered into the agreement which Wiehe was endeavoring to show to him. This appears from correspondence in the record. On March 25, 1918, Wiehe from Chicago wrote a letter to complainant at Los Angeles in which he stated: "As you know, certain stockholders of the Edward Hines Lumber Company, including yourself, own certain timberlands in the State of Mississippi, and for sometime past they have been compelled to carry the burden of a good deal of expensive and unjust litigation upon matters connected with those holdings. Some of the pending litigation has been removed to the Federal courts. These owners have been in consultation with their counsel and reached the conclusion that some plan should be adopted by which their interests will be conserved and safeguarded. I have just returned from a trip to Pennsylvania and secured the approval of a plan by some of the parties residing in that state which I would like to submit to you." The letter then concluded with the request that Wiehe be permitted to come to Los Angeles and explain the matter to complainant. On March 25 complainant replied saying, "I prefer that you convey in writing any information which you wish to impart regarding the subject matter of your letter," but he then stated that a personal interview could be had if an official shorthand reporter was present to report the interview, whose services should be paid for by Wiehe. On the 10th of April, following, Wiehe replied that he had no objections to complainant having a shorthand reporter

present at the interview and suggested that in order to save time and that complainant might be fully satisfied regarding all the matters, complainant have his attorney present also. Afterwards Wiehe went to Los Angeles and trouble arose between the parties, apparently on the ground that Wiehe had not promised to pay for the expenses of the court reporter, and while Wiehe was at Los Angeles, on May 14, 1918, he wrote complainant a letter in which Wiehe stated that he thought from complainant's attitude that he apparently was preparing to start some litigation. The letter also contained the following: "The matters I explained to you yesterday and today in connection with the affairs of the Edward Hines Lumber Company are of interest to you. They have been presented and fully examined into by each stockholder of the corporation and have met with their entire approval." It is clear that the defendants were endeavoring to explain the settlement agreement to complainant. They had no objection to a reporter being present at the interview, but thought it was a good plan, and suggested that complainant have his counsel present. It also appears, from the correspondence above referred to, that complainant knew that all of the stockholders had agreed to the plan that Wiehe was endeavoring to explain to him, and he ought not to be heard to say that the agreement of 1918, in view of what has been done under it, is void, because he alone did not sign it.

If complainant feels that he has not received, by way of dividends, all that he is entitled to, it might be that he is entitled to an accounting and a decree that such dividend be declared. *Channon v. H. Channon Co.*, 218 Ill. App. 397. But he is not asking for this.

Complainant contends under his assignment of cross errors that the court erred in refusing him to amend the prayer in his bill, whereby he sought to ask that the resolutions of 1902 and 1904 be decreed to be null

and void. We think the action of the court was entirely proper, because, from the allegations of complainant's bill, it is clear that he predicated his right for relief on the theory that these resolutions were both valid and binding and gave him valuable rights which he sought to enforce. Under the allegations of the bill no such relief as plaintiff now contends he was entitled to would be warranted.

The decree of the superior court of Cook county is reversed and the cause remanded.

*Reversed and remanded.*

THOMSON, P. J., and TAYLOR, J., concur.