## Cunliffe et al. *v.* Consumers Association of America et al., Appellants.

*Appeals—Equity—Findings of fact—Exceptions not acted upon —Decree—Assignments of error.*

1. On an appeal in an equity case the findings of the chancellor cannot be challenged, where the exceptions filed to them in the court below were not acted upon, and the only assignment of error is to the decree entered.

*Corporations—Foreign corporations—Receiver—Appointment of receiver by Pennsylvania court—Discretion of court—Jurisdiction —Management of internal affairs.*

2. A receiver will be appointed for a foreign corporation where fraud in the sale of its stock and conduct of its business is established and it appears that all of the company's property is located in Pennsylvania, its business is carried on in this State, all its officers and directors are citizens and residents of this State, and substantially all of its stockholders.

3. Such action is not an interference with the internal affairs of a foreign corporation.

4. The appointment of a receiver of a foreign corporation is a matter rather of discretion in the exercise of jurisdiction, than of jurisdiction.

5. In a proper case a receiver may be appointed over a solvent corporation.

Argued March 24, 1924.   Appeal, No. 311, Jan. T., 1924, by defendants, from decree of C. P. No. 1, Phila. Co., June T., 1923, No. 9950, on bill in equity, in case of John T. Cunliffe et al v. Consumers Association of America, Z. P. Smith et al.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.   Decree modified.

Bill for injunction and appointment of receivers over a foreign corporation.   Before McDEVITT, J.
The opinion of the Supreme Court states the facts.
Decree for plaintiff.   Defendants appealed.

*Error assigned* was decree, quoting it.

*George J. Edwards, Jr.,* with him *Hiram B. Calkins* and *Leighton P. Stradley,* for appellants.—The lower court wrongfully exercised visitorial powers over the foreign corporation: Madden v. Light Co., 181 Pa. 617; Kelly v. Thomas, 234 Pa. 419; Hogue v. Foundries, 247 Pa. 12; Thompson v. Coke Co., 269 Pa. 500; Mulligan's Est., 274 Pa. 398; Nat. Guarantee Credit Corp. v. Worth & Co., 274 Pa. 148.

*Thos. Raeburn White,* with him *Albert B. Maris,* for appellees.—The appointment of a receiver was proper: Cowan v. Glass Co., 184 Pa. 1; Treat v. Ins. Co., 203 Pa. 21; Schipper Bros. C. M. Co. v. Coal Co., 277 Pa. 356; Kelly v. Thomas, 234 Pa. 419.

OPINION BY MR. JUSTICE SCHAFFER, April 14, 1924:
The question involved in this case is whether the court below should have appointed receivers for the Consumers Association of America, a corporation of the State of Delaware.

The findings of the chancellor cannot be challenged owing to the state of the record; exceptions filed to them have not been acted upon by the court below, and the only assignment of error is to the decree entered. The appeal was taken under the Act of February 14, 1866, P. L. 28, Purdon's Digest, 13th ed., vol. 2, page 1424, allowing appeals from orders granting special injunctions, which applies to cases involving the appointment of receivers: Schlecht's App., 60 Pa. 172; New Castle & Franklin Railroad Company's App., 3 Walker 281; Haught v. Irwin, 166 Pa. 548; National Guarantee Credit Corp. v. Worth & Co., Inc., 274 Pa. 148.

From the court's findings and the evidence, we take the following facts: All the company's property is located in Pennsylvania, all its business is carried on here, all its officers and directors are citizens and residents of this State, as are substantially all of its stockholders. It only had one stockholder in Delaware and he at the time of the filing of the bill had but recently moved there. The corporation was engaged in the retail grocery business in the City of Philadelphia, where all of its business was transacted and all its property located. It had established nine retail grocery stores in that city. The capital stock of the corporation is divided into two classes, Class A consisted of 100,000 shares, without par value or voting rights, which has no right of control, and Class B of 1,000 shares, without par value, but with the right to vote. Of the 1,000 shares with voting privilege, 980 shares are in the hands of trustees under a voting trust agreement to hold for twenty years, the trustees being five of the individual defendants. Ten shares of Class B stock are unissued and 10 shares are held by the directors and promoters and organizers of the corporation. Class A stock was sold first at $25 and later at $27.50 per share, except to the officers and directors who paid for it but $5 per share.

Plaintiffs are the holders of Class A stock, which they purchased under false representations made to them

by the officers and agents of the corporation, it being untruly stated that the company was a coöperative organization, whereas it is a stock corporation for profit, in which no one has a voice in management except the nine persons who hold a few shares of the Class B voting stock and who are in control of the company. It was also falsely alleged to plaintiffs and other stock purchasers that the concern was being successfully operated, when as a matter of fact its business was being carried on at a loss.

Under the stock selling arrangements entered into by those controlling the company, the sellers of it received 20% of the cash paid by the purchasers which was taken out of the first 25% paid on the subscriptions. There was no obligation on the part of those vending the stock to collect the balance due. Up to June 30, 1923, the company had received from the subscribers to its capital stock $130,469.38. The expense of selling the stock and collecting the subscriptions aggregated 59% of the total amount paid in, and organization and development expenses to 12% of the cash subscribed, making a total of 71% of the amount received. In the entire two years of operation, the cash capital received by the corporation from persons to whom stock had been sold aggregated more than $167,000, which had been impaired to an amount exceeding $137,000. The company's losses were growing as it continued operation. The Banking Department of the State under the provisions of the Securities Act of June 14, 1923, P. L. 809, had refused to approve the sale of the stock. As one of the baits to sell it, stockholders were allowed a 5% discount on all articles purchased by them at any of the company's stores, except on four staple commodities. The corporation undertook to deliver merchandise to its customers, which was not done by other chain store concerns, and, as indicated by the evidence, cannot be profitably done.

The conclusion reached by the court below was, that the foreign charter of the corporation was being used as

a cloak to cover fraudulent conduct on the part of its officers, to the prejudice of its Pennsylvania stockholders, and the outcome of permitting it to continue business would be to make possible the sale of more stock, with the result that additional citizens of Pennsylvania would be defrauded, mostly persons who are in moderate circumstances and who could ill afford to lose the money. As indicating the character of enterprise that was being carried on, it is illuminating to quote an extract from some of the literature used by stock salesmen as a lure to intending purchasers. They were told when they combined their purchasing powers and accumulated large capital, "From this collected capital you will eventually control a wholesale [business] with great warehouses. Then you will run your own factories, make your own goods that your own stores sell. With the earnings from the factories, you will purchase wheat lands, coal mines, herds of cattle, large coffee and tea plantations, fruit groves and farms."

The court determined, in view of the gross impairment of the company's capital, and the large and increasing losses resulting from the operation of its business, and the loss which would accrue to others who might purchase the stock, that its sale to the public should be stopped and its officers and directors enjoined from further carrying on the business, and that receivers should be appointed to liquidate its assets and wind up its affairs.

The appellants contend the company is solvent, but the court below refused to so find. The allegation of solvency is based on the proposition that the unpaid stock subscriptions amounted to more than $623,000. Without their payment (and under the finding of the court they ought not to be collected for the purpose of further carrying on the business) the company is unquestionably insolvent, but whether solvent or insolvent, the court had authority to appoint receivers: Cowan v. Penna. Plate Glass Co., 184 Pa. 1; Treat v. Penna.

Mutual Life Ins. Co., 203 Pa. 21; Schipper Bros. Coal Mining Co. v. Economy Domestic Coal Co., 277 Pa. 356.

The question in the case is, whether, under circumstances such as those here appearing, our courts should appoint receivers for a foreign corporation. Appellant argues the proposition as though it were one of jurisdiction. The question, however, on close analysis will be seen to be not one of jurisdiction but of discretion in exercising jurisdiction. "It has been held indeed that the court has no jurisdiction to appoint a receiver [for a foreign corporation] but the better opinion is that it is a matter rather of discretion than of jurisdiction. The rule rests more on grounds of policy and expediency than on jurisdictional grounds; more on want of power to enforce a decree rather than on jurisdiction to make it. . . . . . . And if a corporation has all its property at the forum, and does all its business there, it would seem that a court of equity might well appoint a receiver to wind up its business affairs": 23 Ruling Case Law, page 34. In Chicago Title & Trust Co. v. Newman, 187 Fed. 573, the court said: "A court of equity will not, as a general rule, administer the internal affairs of a foreign corporation. As decided by the Supreme Court of Illinois in Babcock v. Farwell, 245 Ill. 14, 33, 91 N. E. 583, the question is not strictly one of jurisdiction, but rather of discretion in the exercise of jurisdiction."

Appellants rely entirely on the rule announced in many of our adjudications that the court will not take jurisdiction of a case involving the internal management of a foreign corporation and point to Madden v. Electric Light Co., 181 Pa. 617; McCloskey v. Snowden, 212 Pa. 249; Kinney v. Mexican Plantation Co., 233 Pa. 232; Kelly v. Thomas, 234 Pa. 419; Hogue v. American Steel Foundries, 247 Pa. 12; Thompson v. Southern Connellsville Coke Co., 269 Pa. 500, as sustaining their position. It is true that these cases are authority for the proposition for which they are cited, but the situation which confronted the courts in them was very different from

that now before us. Generally speaking, the foundation of those suits was the dissatisfaction of some stockholders in regard to a particular transaction or contract into which the directors of the corporation had entered, and the court, in order to grant the relief, would have had to look carefully into the affairs of the corporation to ascertain whether the action the directors had taken was for the best interest of all concerned. In Madden v. Electric Light Co., 181 Pa. 617, the court said, at page 622: "In substance, the averment is that at the office of the company, in the State of New Jersey, the management, in violation of their official duty, entered into a contract to be performed in Pennsylvania, whereby the stockholders suffer. This plainly strikes at the internal management of the company." Likewise in McCloskey v. Snowden, 212 Pa. 249, it was stated at page 253: "For all that appears it is merely a difference of view and judgment between the complainants as individual or minority stockholders and the constituted board of management of the corporate affairs." The "difference of view and judgment" was as to whether a certain law suit should be brought by the directors. The case of Kinney v. Mexican Plantation Co., 233 Pa. 232, involved a petition for a mandamus to require the defendant's officers to permit the relator to examine the books and records of the defendant corporation which contained the names and addresses of the stockholders. Hogue v. American Steel Foundries, 247 Pa. 12, was an action of assumpsit to recover the amount of certain dividends which the plaintiffs averred should have been declared on their stock following the reorganization of the defendant corporation. The court said at page 15: "The determination of the question thus raised, would require us to investigate and determine the validity of the plan of reorganization, and would require us to ascertain, and pronounce upon, the rights of the original shareholders, as between themselves and their own corporation. These questions are we think for the New Jersey

courts to determine, as arising under the local law." In that case, it was further said (page 17) : "As to the exercise of general jurisdiction over foreign corporations doing business in Pennsylvania there can be no question." In the case of Thompson v. Southern Connellsville Coke Co., 269 Pa. 500, the plaintiff asked a court of equity to investigate transactions involving sales contracts. This court said: "The single question for determination is, whether the acts complained of involve the internal management of a foreign corporation...... [page 504] No case can well be imagined which more clearly involves the internal management of a corporation than the one in hand. The plaintiff in his bill says that two selling companies made proposition to the defendant company to sell its product, and that a majority of the board of directors gave the preference to the company asking the larger commission on the sales; he asked a court of equity to investigate this transaction, and, if it finds it to be as stated, to declare it void. We can conceive of nothing more certainly supervisory over the management of the internal affairs of a corporation than review of such an act as this......We are asked to construe a West Virginia statute, regulating the internal management of corporations created in that state and involving a broad question of its public policy; our construction might not be in full accord with the views of the courts of that jurisdiction, in which event there would be presented to corporations there created, and doing business here, the anomalous and confusing situation that management in their home state is regulated in one way and here in another." In Tenth National Bank of Phila. v. Smith Construction Co., 242 Pa. 269, the court appointed a receiver for a New Jersey corporation "with a principal office in Philadelphia engaged largely in building railroads and in public contracts." Also in Blum Bros. v. Girard Nat. Bank, 248 Pa. 148, the court appointed receivers for a New Jersey corporation. It does not appear that the right to appoint receivers for

the foreign corporations in these two cases was challenged.

What was said in Starr v. Bankers Union of the World, 81 Neb. 377 (1908), to our minds convincingly reasons in favor of the exercise of the power to appoint receivers under the circumstances shown in the record before us: "The defendants contend that the courts of this state cannot administer the affairs of a foreign corporation, and that the district court......had therefore no jurisdiction of the subject of the action. Where the general administration of the assets of an insolvent corporation is proceeding in the state of its creation, there are good reasons, founded on the principles of judicial comity, why the courts of another state should not appoint receivers of such of its assets as may be found in its jurisdiction; ......The power to appoint a receiver of the assets of a foreign corporation is constantly exercised: 5 Thompson on Corporations, section 6861; 3 Cook on Corporations, 5th ed., section 865. That a court should not appoint a receiver to administer the internal affairs of a foreign corporation is a very general rule, the reason for which is that the court cannot obtain control of all the property, books, records and members of the corporation so as to do full justice between all the parties interested; but the operation of this rule ceases when the reason for it no longer exists, and whatever might be the objection to appointing a receiver for the property of a foreign corporation found in this State, where such property is only part of its assets, and where the books and records and officers of such corporation are beyond the process of the court, they do not apply in this case. Here all the assets, books, and records were brought into this jurisdiction. Here the defendants assumed to exercise the power and authority of the foreign corporation. No assets, no books, no person assuming to act as its officer remained in the state of its creation. Clearly the courts of this State......would be better able to take jurisdiction of an action by its beneficiaries and members

than would the courts of the state from which it was abducted......None of the ordinary reasons why the courts of this State should not take jurisdiction of these assets remained, but whether the suit in which the receiver was appointed is considered as one to subject the assets of the foreign corporation found in this State to the payment of its debts, or whether it be considered as a suit to administer and wind up the affairs of such corporation, every reason exists why the courts of this State should take jurisdiction." Speaking through the present Chief Justice in Kelly v. Thomas, 234 Pa. 419, where complainant alleged that the officers of the defendant corporation had failed to enforce certain contracts against another corporation and had sold some of the corporation's property for an inadequate price, we said (page 431) : "It is to be noted that in each instance where other jurisdictions have taken a more liberal view than our own with reference to granting relief involving an inquiry into the management of the internal affairs of a foreign corporation, the business and property of the corporation affected were within the jurisdiction of the court......In a case......where the foreign corporation was served and all the parties or property directly involved were within the jurisdiction of the court, if the actual exercise of visitorial powers is not requisite to the relief, the rule as to noninterference should be restricted and not carried further than is absolutely required by universal fixed rules of law ; for, where possible, we should prevent its use as a cloak to cover apparent fraudulent conduct on the part of officers of foreign corporations to the prejudice of Pennsylvania stockholders." There was prescience in this judicial declaration, and, in the case at bar, under the facts disclosed, we have come to the emergent situation, where our courts, to protect our own citizens, and to preserve property within our jurisdiction for those of them whose money has gone into it, must lay hands on a fraudulent enterprise, and not permit it to hide behind the screen of corporate or-

ganization by another state and inveigle further victims. It would seem strange to say that the courts of Pennsylvania have no jurisdiction to appoint a receiver for a corporation where all of the assets, all of the business, all of the officers and directors, and all of the books and records of the corporation are in this State, merely because the promoters of the corporation for some purpose went to another state to have the company incorporated.

It was stated at bar by counsel for appellees that it is not intended to attempt to collect the unpaid stock subscriptions or to obtain or convert any assets not to be found in this State. For this reason, without passing upon a receiver's right so to do, in other similar cases, we will treat the decree as so modified as to exclude these items, and, thus modified, it is affirmed and the appeal dismissed at the cost of appellants.