W. Q. O'NEALL COMPANY *v.* O'NEALL ET AL.

[No. 16,173. Filed March 5, 1940. Rehearing denied April 17, 1940. Transfer denied May 27, 1940.]

*W. J. Sprow,* of Crawfordsville; and *Matson, Ross, McCord & Clifford,* of Indianapolis, for appellant.

*Harding & Harding,* of Crawfordsville, for appellees.

STEVENSON, J.—This is an action by the appellees against the appellant company to recover dividends accrued on preferred stock. The complaint alleged that the stock in this company was originally owned by E. Howard O'Neall and Walter H. O'Neall, brothers. E. Howard O'Neall died on August 11, 1934, and owned at the time of his death 850 shares of the preferred stock of the appellant corporation and the said Walter H. O'Neall owned all of the common stock of said corporation consisting of 500 shares. The complaint further alleged that the appellees, Dorothy C. O'Neall, widow, and David C. O'Neall, minor son, were the sole surviving heirs at law of E. Howard O'Neall and following his death they became the owners of the preferred stock in the appellant corporation. The complaint alleged that the appellant corporation had failed and refused to pay dividends to the appellees on their preferred stock since January 1, 1935, although the earnings of the company were sufficient to warrant the payment of dividends. The original complaint sought a declaratory judgment determining the rights of the preferred stockholders to the payment of dividends. To this complaint an answer in general denial was filed and the case was submitted to the court for trial who found the facts specially and stated conclusions of law thereon.

After the trial of the case, the plaintiff (appellee herein) filed a petition for permission to amend the complaint to conform to the proof. This petition was granted and the complaint was amended to include a claim for dividends prior to the death of said E. Howard O'Neall and to include a demand against the defendant (appellant herein) for the payment of dividends that had accrued on said preferred stock. The court then announced its finding of facts and stated conclusions of

law thereon, to each of which conclusions the appellant excepted. On the conclusions of law the court rendered judgment against the appellants for the sum of $10,404.46, this being the amount of delinquent dividends found to be due the appellees on their preferred stock together with interest thereon. A motion for new trial was subsequently filed and overruled and the errors assigned in this court are the alleged errors in each of the court's conclusions of law, numbered 1 to 9 respectively, and the tenth error assigned is the overruling of the appellant's motion for new trial.

The record discloses the following facts. The court found that the appellant company was originally organized in 1909, and was operated as a corporation until about the first of October, 1931, when the corporate articles were amended pursuant to the provisions of the Indiana General Corporation Act of 1929. At that time Walter H. O'Neall owned 300 shares and E. Howard O'Neall owned 170 shares of the capital stock in said corporation. This capital stock then consisted of 500 shares of a par value of $100.00 each. At that time the earned surplus of the company was approximately $195,000.00. At and prior to October 1, 1931, the two brothers agreed upon a reorganization of the company to the effect that the capitalization should be changed and that 850 shares of preferred stock should be issued of a par value of $100.00 per share and 500 shares of no par common stock should be issued. The preferred stock carried dividends at the rate of 6 per cent per annum, payable semi-annually and 10 per cent thereof was to mature each year beginning January 1, 1933.

It was agreed between the brothers that Howard should take the 850 shares of preferred stock and $10,600.00 in cash in exchange for his 170 shares of stock in the old company, and Walter should take 300

shares in the new common stock in exchange for his 300 shares in the old company. The reorganization was accordingly perfected on this basis. The 200 shares of common stock in the new company were left in the company treasury. This plan of reorganization continued in operation until July, 1933, when the brothers agreed that the 6 per cent dividend rate on the preferred stock should be reduced to 4 per cent. In January, 1934, the remaining 200 shares of common stock in the treasury were issued to Walter O'Neall as representing undivided profits. On January 12, 1932, a dividend of $1,275.00 was declared by the board of directors on the preferred stock outstanding covering the period from October 2, 1931 to January 1, 1932, This dividend was never paid. Dividends to the amount of $5,100.00 were paid on the preferred stock in 1932. $3,541.00 were paid in 1933, and $3,373.00 were paid in 1934. No other dividends were paid on the preferred stock. The court found the following dividends had accumulated on the preferred stock over the period in question:

"Fourth Quarter 1931 (6%) _____ $1,275.00
                     1932 (6%) _____ 5,100.00
January to July, 1933 (6%) _____ 2,550.00
July, 1933, to Jan., 1934 (4%) _____ 1,700.00
1934 to November
     (4% on $85,000) _____ 2,833.33
November 1, 1934, to Jan. 1, 1935
     (4% on $81,000) _____ 540.00
1935 (4%) _____ 3,240.00
1936 (4%) _____ 3,240.00
     Total _____$20,478.33

Total dividends paid aggregate $12,014.93."

The court further found by Findings numbered 19, 20, and 21, the following facts:

"No. 19. Walter O'Neall at all times completely dominated the company and its operation. The

Board of Directors held only one meeting in the year 1935, and that for organization following the stockholders annual meeting; held only two meetings in the year 1936, one for organization after the stockholders meeting, and one to adopt a resolution fixing the declared value of the capital stock for Federal Tax requirements; two meetings only in the year 1934, one formal organization meeting following the annual stockholders meeting, and one for the purpose of retiring $4,000.00 of the preferred stock. The stopping of the payment of dividends in the year 1935 up until the meeting of the Board of January, 1936, was done by Walter O'Neall without reference to his Board of Directors; the payment of the preferred dividends monthly in the year 1934 was done by Walter O'Neall without any reference to his Board of Directors; his endeavors to purchase the interest of Mrs. O'Neall and her son, and his proposal to use the company assets in the purchase of such stock, all on behalf of the Company, were all without any direction or authority from the Board of Directors; the real estate taken over in the years 1934, 1935, and 1936, in the aggregate of some $55,000.00—with the exception of one parcel at a cost of $3,125.00, was taken over by Walter O'Neall for the company without any action by the Board of Directors; and in general he completely dominated the company's operations and business, and ran the enterprise as a one-man affair.

"No. 20. At all times from October 1, 1931, to this time the company has been possessed of ample surplus or earnings and profits from which to pay the preferred dividends, without impairment of its capital, and without such diminution of its working capital and resources as would in any way hamper its operations.

"No. 21. The action of the company in withholding and refusing to pay the dividends accrued and accruing upon the preferred stock has at all times been oppressive; and therein the Board of Directors, and particular the dominating member, Walter O'Neall, has at all times acted in bad faith and oppressively."

The appellant in discussing the errors in the conclusions of law based upon the above facts contends that the trial court had no power or jurisdiction to allow a recovery for accrued dividends against the appellant corporation when the directors were not parties to such action and when the Board of Directors had failed to declare dividends on the preferred stock.

Under these contentions the ultimate question for our decision is whether or not a court of equity in an action against the corporation may order dividends paid out of earnings on preferred stock certificates when the Board of Directors has failed and refused to declare such dividends and when said Board of Directors in so doing has "acted in bad faith and oppressively." It is our opinion that the question must be answered in the affirmative.

As a general rule the officials of a corporation are the sole judges as to the propriety of declaring dividends and the courts will not interfere with the proper exercise of that discretion. Yet when the right to a dividend is clear and there are funds from which it can properly be made, a court of equity will interfere to compel a company to declare it. Directors are not allowed to use their power illegally, wantonly, or oppressively. The rights of a preferred stockholder are enforceable in equity against a company in accordance with the terms of his contract. *Spear* v. *Rockland-Rockport Lime Co.* (1915), 113 Me. 285, 93 A. 754; 18 C. J. S. 666, Sec. 235; *Seitz* v. *Union Brass & Metal Mfg. Co.* (1922), 152 Minn. 460, 189 N. W. 586, 27 A. L. R. 293; *American Steel Foundries* v. *Lazear* (1913), 204 F. 204.

The authorities are collected and the rule announced in an article entitled "Rights and Remedies of Preferred Shareholders," 37 Central Law Journal 433, 437:

"The contractual right of preference in the distribution of dividends over the common shareholders would be delusive unless the law gave the preferred shareholder a substantial remedy to enforce such right. . . . There is no difficulty in supporting the jurisdiction of equity, on the theory that the refusal of such a dividend is a breach of trust on the part of the directors. The contract which gives the preferred shareholders a right to the dividend out of the net earnings impresses any net earnings in the hands of the directors, for the particular year, with a trust in behalf of the preferred shareholders, to the extent required by the terms of the contract. If the directors refuse to perform that trust by making the distribution, a court of equity will, obviously, in a suit in which the parties in interest are made defendants, compel them to do so. Where the dividends are not paid upon preferred stock in pursuance of the terms of a contract, the holders of such stock may maintain an equitable action to compel a specific performance of the contract and to restrain the payment of dividends on the common stock until the arrears of their preferred dividends have been paid."

As was said by our Supreme Court in the case of *Star Publishing Co.* v. *Ball* (1922), 192 Ind. 158, 171, 134 N. E. 285:

"It is largely a matter of discretion with the board of directors as to whether they will use the net profits for a dividend or will use them in the business of the company, although there is a limit to this discretion, and the courts will not allow the directors to use their power oppressively by refusing to declare dividends where the net profits and the character and conditions of the business clearly warrant it."

Facts quite similar to the case at bar were before the Appellate Court of Illinois in the case of *Channon* v. *H. Channon Co.* (1920), 218 Ill. App. 397, 400, 401. Harry Channon, a stockholder in the H. Channon Com-

pany, sued the corporation praying for an accounting and the declaration of a cash dividend, contending that the refusal of the directors to declare a dividend was unjustifiable and arbitrary. The case was referred to a master who heard the evidence and found that the company was in a good financial condition, able to pay a dividend and that the refusal of the directors to declare a dividend was unjustifiable and arbitrary. The evidence disclosed that Henry Channon, the largest stockholder, dominated the business and publicly stated that he would never declare any further dividends while he lived. On these facts the court said:

"As a general proposition, the action of the board of directors in refusing to declare a dividend is final, and such discretion will not be interfered with by a court of equity in the absence of bad faith or arbitrary or unjustifiable conduct. . . . But the power of a court of equity to order the directors of a trading corporation to declare and pay a dividend from the unused profits when they have improperly refused to do so is undoubted. . . . A trading corporation is organized and carried on primarily for the profit of the stockholders and it would be a strange rule indeed if the board of directors could arbitrarily refuse to pay dividends when the financial condition of the company would warrant it. . . . We think the refusal of the board of directors to declare and pay a dividend was unjustifiable and arbitrary. In these circumstances a court of equity may intervene to compel the directors to declare and pay a dividend as was done in the instant case."

The rule seems to be generally recognized that preferred stockholders may maintain a suit to compel the directors to declare and pay a dividend on the preferred stock when they abuse their discretion by refusing so to do. Fletcher Cyc. of Corporations, Vol. 12, Ch. 58, Sec. 5451; *Thomas* v. *Laconia Car Co.* (1925), 251 Mass. 529, 146 N. E. 775; *Lee* v.

*Fisk* (1915), 222 Mass. 418, 109 N. E. 833, 834; *Cratty* v. *Peoria Law Library Ass'n.* (1906), 219 Ill. 516, 76 N. E. 707; 7 R. C. L. Sec. 269.

The appellant contends, however, that in order to maintain such an action the directors themselves must be made parties defendant. The appellant further contends that before an action may be instituted against a corporation to compel the payment of dividends an action must first be maintained against the directors to compel them to declare such dividends. We cannot agree with these contentions. The court found as a fact that this corporation was dominated entirely by the president of the board of directors who owned all of the common stock, that this was in truth and in fact a one-man corporation. In the action which the appellees instituted against the corporation this president and owner of the common stock appeared and on behalf of the corporation actively opposed the proceedings. He testified fully on all matters involved in the litigation. It has not been made to appear that any new or additional facts would have been presented to the court for its consideration had Walter H. O'Neall and the other two directors been made parties defendant. This action was originally instituted for the purpose of determining the rights of the appellees to payment of dividends on their stock. While a declaratory judgment was asked this action was in the nature of and involved an accounting in order to determine the right to the payment of dividends. If the directors were necessary parties to such proceedings and if without them there was a defect of parties, these facts were known to the appellant at the time of the trial of this case. Having made no objection on this ground, they are now deemed to have waived

such defect. *Watson* v. *Burnett* (1939), 216 Ind. 216, 23 N. E. (2d) 420.

It is our opinion, therefore, that the trial court under the facts found committed no error in rendering judgment against the corporation for the dividends found to have accrued on the preferred stock for the years 1935 and 1936.

The appellant further contends that the court erred in including in its judgment the item of $1,275.00 covering a declared dividend for the period from October 2 to December 31, 1931. The appellant contends that this dividend was a debt due the decedent for which the administrator alone could recover. The complaint alleged and the court found that prior to the bringing of this suit the estate of Howard O'Neall was duly administered, final settlement made, and the administrator discharged. All debts and liabilities of his estate were fully settled and the preferred stock became the property of the appellees as sole surviving heirs at law. Under such conditions the heirs at law are entitled to maintain an action to recover on debts and obligations due the decedent. *Magel* v. *Milligan* (1898), 150 Ind. 582, 50 N. E. 564. There was no error in including this item in the judgment.

The appellant also challenges the right to include in the judgment an item of $709.00 as the dividend for the period from February 1, 1933, to July 1, 1933. As to this item of approximately $709.00, the appellant contends that there is no finding of facts which justifies this conclusion. It appears from the finding of facts that the six per cent preferred certificates of stock which Howard O'Neall held were not surrendered until the 1st day of July, 1933, at which time he accepted four per cent preferred certificates

in exchange therefor. While it is true that the records of the appellant corporation showed that on July 10, 1933, a dividend of four per cent was declared and ordered paid covering the period from February 1, 1933, to July 1, 1933, yet the court finds that at such time there were sufficient net earnings from which to pay the preferred dividend at the rate of six per cent as provided for in the stock certificate. The court having found that there existed the obligation to pay the dividend at the rate of six per cent and having found that the net earnings justified such payment, this item therefore is in the same status as the items of dividends for the years 1935 and 1936.

By conclusion of law No. 7, the court allowed interest upon the several dividend accruals at the times they should have been paid at the rate of 6% per annum until paid. The appellant challenges the correctness of this conclusion. "The rule has been thoroughly settled in this state that where there has been a vexatious delay in the payment of an amount due, interest may be charged from the date when due." *Guynn* v. *Daugherty* (1913), 53 Ind. App. 598, 102 N. E. 147; *Rogers* v. *West* (1857), 9 Ind. 400; *Killian* v. *Eigenmann* (1877), 57 Ind. 480; *Hazzard* v. *Duke* (1878), 64 Ind. 220. Under the facts found, there was no error in allowing interest on the dividends accrued.

Complaint is further made of the allowance of $810.00, dividends accrued from January 1, 1937, to April 1, 1937. It is our opinion that the amended complaint was sufficient to include this item and there has been no showing that the appellants were harmed by such inclusion, since the same was past due at the time of the trial.

The appellant contends under his assignment No. 11 that the court committed error in permitting the appel-

lees to amend their complaint at the close of all the evidence. The appellant charges that this was erroneous for the reason that after the amended complaint was filed the court filed its special finding of facts, stated conclusions of law thereon, and rendered judgment without an answer having been filed to said amended complaint. That the judgment thereon was accordingly erroneous because no issue was formed and hence there was nothing on which the court could render judgment. It will be noted that the appellant does not charge that the court abused its discretion in permitting the complaint to be amended but raises only the question that no issue was formed by the pleadings. Such error, if any, was not embodied in the appellant's motion for new trial and hence cannot be raised for the first time on appeal. *Parscouta* v. *State ex rel. Bakajsa* (1905), 165 Ind. 484, 75 N. E. 970. See also *American Surety Co.* v. *State, ex rel. Taber* (1936), 102 Ind. App. 378, 1 N. E. (2d) 295.

We have read the entire evidence in this case and and it is our opinion that it is sufficient to support the finding of facts. There was accordingly no error in overruling the appellant's motion for new trial.

As a part of the judgment rendered by the trial court in this case and as a last paragraph of said judgment the court entered the following order:

"And it is further adjudged and decreed that defendant is obligated under the terms of its preferred stock issue to continue paying to the plaintiffs accumulative dividends at the rate of 4% per annum, accruing from and after April 1, 1937, so long as the defendant is possessed of surplus or earnings in profits from which to pay such preferred dividends without impairment of its capital; and the defendant is hereby ordered and mandated

to declare and pay such accruing dividends in due course and to pay the accrued dividends with interest thereon as herein adjudged."

In the light of what we have said, it is apparent that the court was in error in issuing a mandate to the defendant to declare and pay dividends in the future so long as it is possessed of surplus or earnings from which to pay such dividends. It is the duty of the directors of the corporation to declare and pay dividends to the stockholders out of the surplus earnings or net profits or surplus paid in in cash of the corporation. § 25-211, Burns' 1933. But this duty rests in the sound discretion of the directors and the corporation can be compelled to pay such dividends only upon a showing that the board of directors has abused its discretion in failing to declare them.

It is our opinion that the trial court was in error in ordering the payment of future dividends and the judgment of the trial court should be modified by striking and omitting therefrom the paragraph last above quoted.

The trial court is accordingly ordered to modify the judgment heretofore entered by omitting therefrom the last paragraph as above quoted and when so modified, the judgment of the trial court is affirmed.

Bridwell, P. J., dissenting.

NOTE.—Reported in 25 N. E. (2d) 656.