## KROESE v. GENERAL STEEL CAST-INGS CORPORATION et al.

### No. 10029.

United States Court of Appeals.
Third Circuit.

Argued Dec. 23, 1949.

Filed Jan. 31, 1950.

Herman I. Lurie, New York City (Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., Nemerov & Shapiro, New York City, on the brief), for appellant.

Chauncey Belknap, New York City (Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., Allen Hunter White, Philadelphia, Pa., John V. Duncan, New York City, on the brief), for appellees.

Before MARIS, GOODRICH and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

Are a majority of a corporation's board of directors indispensable parties to an action by a shareholder to compel the declaration of dividends? That is the question before us in this case. The district judge, on motion, dismissed the complaint; he thought the directors were indispensable parties and that the court was powerless to grant relief in their absence. D.C.E.D.Pa.1949, 9 F.R.D. 273.

 There has been no trial of facts; not even an answer by the defendants. All we have is the plaintiff's complaint, plus a motion to dismiss. On this state of the record we must assume, ad hoc, the truth of the allegations in the complaint. It is also to be observed, preliminarily, that the case is in federal court on grounds of diversity of citizenship only. We recognize rights and interests, therefore, as a Pennsylvania court would recognize them, including reference to the foreign law in the same fashion as a Pennsylvania court would make it.[1] Pennsyl-

---

1. 3 Moore's Federal Practice 2153, under Par. 19.07 (2d ed. 1948), states flatly that whether parties are indispensable should be determined in federal court by federal rather than state rules. We think this statement cannot apply where the

vania law was not briefed by either party in the argument, but we have made our own investigation. There is no Pennsylvania decision either directly in point or anywhere near it, but we will refer hereafter to such Pennsylvania authority as we find helpful in considering the general question.

On the basis of the plaintiff's statement, these facts may be assumed for the purpose of our consideration. The corporate defendant is a Delaware corporation whose principal office is in Ridley Township, Delaware County, Pennsylvania. It operates plants in Pennsylvania and Illinois for the manufacture of steel castings for locomotives and railway cars. The plaintiff is a resident of New York. The corporation has outstanding 456,576 no-par common shares, 92 per cent of which are held by four large users of the products manufactured by it.[2] Also authorized and outstanding are 100,000 shares of $6 cumulative preferred no-par stock. This issue is widely held and the plaintiff owns 120 shares. The certificate of incorporation provides that holders of the preferred stock are entitled to receive an annual dividend of $6 per share "Out of the net profits of the Corporation or out of its net assets in excess of capital, * * * when and as declared by the Board of Directors * * *." Back dividends on the preferred shares carry no voting rights unless, as is the case here, the corporation defaults on four quarterly dividend payments, in which event the preferred shareholders are entitled to elect one-third of the board of directors.

Dividend arrearages on the preferred shares amounted to $5,850,000 when the complaint was filed, or $57.75 per share. The corporation's net worth on December 31, 1947, was $28,000,105. It had a capital surplus of $4,133,449 and an earned surplus of $13,410,080. There were "net current assets" of $12,114,409, and a ratio of current assets to current liabilities of approximately 7 to 1. From 1940 through 1947 the corporation earned net profits totaling $18,278,617, and had accumulated out of earnings a reserve of $17,411,310 against plant facilities which had an original cost of $33,000,000.

The plaintiff further alleges that in refusing to declare preferred dividends the directors are "unreasonable and arbitrary" and acting primarily in the interest of the four major common shareholders they represent. He says that "in violation of their duties as fiduciaries to the holders of said preferred stock" the directors are expanding the corporation's production facilities in order to assure the four major common shareholders of an adequate supply of its products. The relief demanded is payment to the preferred shareholders of the arrearages.

The plaintiff has not served the majority of the board of directors of this corporation in the Eastern District of Pennsylvania. When he started his lawsuit he named no directors at all. The District Court on December 13, 1948, held that a majority of the directors were necessary parties and ordered them joined as defendants. But only three out of the twelve were served in Pennsylvania and the plaintiff says that there is no one state or federal district in which a majority of the board may be served.

We are faced squarely with the question, then, whether the action can proceed in the absence of personal jurisdiction over at least sufficient directors to make up the majority of the board. The defendants understandably support the result reached by the District Court in holding that the action could not go on without personal jurisdiction over the directors. If that

question of the indispensability of a party depends upon substantive law which in the diversity case, is a matter of the law of the state. Compare 3 Ohlinger's Federal Practice 355 et seq. (1948), for what seems to us a more accurate analysis of the situation. We do not need to try in this case to dip to the bottom of this seemingly inexhaustible well. The result at which we arrive can be reached by either route.

2. The four principal holders of the common shares are: American Steel Foundries Corp., 38.33%; Baldwin Locomotive Works, 32.37%; American Locomotive Co., 13.14%; Pullman, Inc., 8.54%.

holding results in the complaining shareholder being unable to bring his suit either in any federal court or, for that matter, in any state court the result may disappoint the plaintiff, but the defendants will bear up under it pretty well.

The defendants' argument is simple and easy to understand. Dividends are payable, they say, only when the directors vote them. To make the directors vote them there must be before the court the human beings, that is the directors, who are to be made subject to the decree. Like any other situation where the chancellor is asked to act against an individual because of alleged violation of a legal duty, there must be personal jurisdiction over the individual before he can be affected by the order.

■ It is hornbook law that there must be personal jurisdiction over an individual who is to be bound by a judgment at law or a decree in equity. The proposition is too elementary, too well settled to require us to display learning in citing authorities for its support.

But we do not think the case is as easily settled as the mechanical application of this well-settled rule about jurisdiction in personam would settle it. We think there are further considerations and these we proceed to state.

■ No one disputes the general proposition that the payment of dividends is, in general, a matter for the exercise of honest business judgment by the directors of a corporate enterprise. Courts are rightly reluctant to interfere with the management of a business concern by the individuals who have been selected by its owners to manage it.[3] But when it appears that the persons who are charged with managing according to their business judgment are not exercising that judgment, but are profiting some participants in the enterprise at the expense of others, then courts do interfere to protect the participants to whom this wrong is being done.[4] The plaintiff in this case makes charges in his complaint which, if true, would bring him under this rule. Let us say again, purely for emphasis, that we do not say the charges are true; we only take the plaintiff's allegations at this stage of the proceedings as though they were true.

It is to be observed that when a court steps in and orders the payment of a dividend, the corporate affairs have reached the point where the judgment of the directors is no longer controlling. The set of facts presented is such that the court substitutes its judgment, based on a rule of law, for the ordinary business judgment of those in charge of the business enterprise. The court says, in effect, to the directors, "You have abused your office. You have withheld earnings of this enterprise from those who, by the rules of law governing it, are entitled to be paid those earnings. You go ahead and pay them."

■ In such a case, even though individual directors are joined as parties, they are not called upon to exercise any business discretion. The case has passed that point. As said before, the court is declaring rights protected by a rule of law,

---

3. Jones v. Motor Sales Co., 1936, 322 Pa. 492, 185 A. 809; Pardee v. Hardwood Electric Co., 1918, 262 Pa. 68, 105 A. 48; Hopkin v. Union Canvas Co., 1932, 104 Pa.Super. 264, 158 A. 301; 11 Fletcher, Cyclopedia of the Law of Private Corporations § 5325 (perm. ed. 1932).

4. Jones v. Costlow, 1944, 349 Pa. 136, 141–142, 36 A.2d 460, 463–464; Eshleman v. Keenan, 1937, 22 Del.Ch. 82, 87–88, 194 A. 40, 43. We have found no Pennsylvania decision which would preclude an action in Pennsylvania against a foreign corporation to compel the declaration of dividends. Cf. Conerty v. Butler County Oil Refining Co., 1930, 301 Pa. 417, 152 A. 672 (inspection by shareholders of books of Arizona corporation); Cochran v. Shetler, 1926, 286 Pa. 226, 133 A. 232 (action by receiver of Delaware corporation against directors for improper declaration of dividend); Cunliffe v. Consumers' Association, 1924, 280 Pa. 263, 124 A. 501, 32 A.L.R. 1348 (receiver appointed for Delaware corporation); Loan Society of Philadelphia v. Eavenson, 1915, 248 Pa. 407, 94 A. 121, (action by Delaware corporation against directors for mismanagement).

not calling upon the directors to exercise judgment. If formal action is to be recorded, following a court decree, on a minute book of a directors' meeting, that formal action is nothing but a ministerial act. The duty of a corporation to pay dividends then and there has been imposed by the judgment of the court, not by the ayes and nays of the members of the board. The situation becomes in substance the same as that in which any corporate creditor sues the enterprise in the corporate name to recover from it what it owes him; he does not need any meeting of the corporation's board to make his judgment good. Nor does a shareholder whose claim to dividends is based on his showing of fiduciary mismanagement need a directors' meeting to make his rights good. The judgment of a court is enough in either case. It follows that directors are not indispensable parties to a lawsuit by a defrauded shareholder to recover dividends in a proper case.[5]

■ But how can the chancellor's action be made effective? To doubt its effectiveness is to doubt the power of a court of equity when wielded by a chancellor with legal imagination. It is certainly true that he cannot do anything to directors who are not subject to his jurisdiction. But he can do a great deal to the property of the corporate group which is within his jurisdiction. The Pennsylvania courts know how to sequester assets of foreign corporations when the case is such that this form of relief is appropriate[6] and the federal courts are equally potent in this respect.[7] If the formal act by the board of directors is necessary under the Delaware General Corporation Law to regularize the dividends to which shareholders are entitled,[8] we cannot think that a receiv-

5. Courts have in other situations bypassed the normal dividend declaration procedure. There are many decisions compelling corporate managers to pay funds which they have misappropriated directly to complaining shareholders. E. g., Smith v. Rader, 1918, 31 Idaho 423, 173 P. 970; Tierney v. United Pocahontas Coal Co., 1920, 85 W.Va. 545, 102 S.E. 249. In all of these cases, the funds wrongfully taken by the managers belonged, strictly speaking, to the corporate entity rather than to individual shareholders. Pure theory would have it that the funds should have been ordered paid to the corporation, the directors of which would then order distribution to the shareholders. But the intermediate steps were eliminated for the following reasons: some members of the complaining class were themselves wrongdoers and not deserving of equitable relief, Matthews v. Headley Chocolate Co., 1917, 130 Md. 523, 100 A. 645; Joyce v. Congdon, 1921, 114 Wash. 239, 195 P. 29; the directors had been parties to the wrongful conduct, Backus v. Finkelstein, D.C.Minn.1927, 23 F.2d 357; members of the complaining class had waived their rights or were satisfied with conditions as they existed before the bringing of the lawsuit. Bailey v. Jacobs, 1937, 325 Pa. 187, 189 A. 320; Chounis v. Laing, 1942, 125 W.Va. 275, 23 S.E. 2d 628, the defendant was the principal in a one-man corporation, W. Q. O'-Neall Co. v. O'Neall, 1940, 108 Ind.App. 116, 25 N.E.2d 656.

The Supreme Court of Delaware has said that there may be exceptional circumstances, such as those enumerated above, in which the normal procedure may be by-passed. Keenan v. Eshleman, 1938, 23 Del.Ch. 234, 253–254, 2 A.2d 904, 912–913, 120 A.L.R. 227.

6. Cunliffe v. Consumers' Association, 1924, 280 Pa. 263, 124 A. 501, 32 A.L.R. 1348; Blum Bros. v. Girard Nat. Bank, 1915, 248 Pa. 148, 93 A. 940, Ann.Cas.1916D, 609; Tenth Nat. Bank of Philadelphia v. Smith Construction Co., 1913, 242 Pa. 269, 89 A. 76.

7. Fed.R.Civ.P. 70, 28 U.S.C.A.: "If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party. On application of the party entitled to performance, the clerk shall issue a writ of attachment or sequestration against the property of the disobedient party to compel obedience to the judgment. * * *"

8. 1935 Del.Rev.Code § 2066: "The directors of every corporation created un-

ership or sequestration of a foreign corporation's property will not produce the result. Equity courts have known for a long time how to impose onerous alternatives at home to the performance of affirmative acts abroad as a means of getting those affirmative acts accomplished.[9] In other words, if there is a corporate defendant properly subject to suit within the state and the plaintiff makes out a legal right against the corporation and the corporation has property within the state as well as being subject to suit, the chancellor can accomplish the result the plaintiff is entitled to have accomplished.

■ The necessity of formal action by the directors is not a matter of federal law, as we stated earlier. It is a matter of Pennsylvania law, which in this case would make reference to the law of Delaware, the state which chartered the defendant corporation.[10]

It is surprising how little direct authority there is on the precise point of this case. We admit a Sixth Circuit case squarely against the conclusion here reached. Schuckman v. Rubenstein, 6 Cir., 1948, 164 F.2d 952, certiorari denied 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151. While the court in that case does not say anything about it, we take it that it must have been giving its views on Ohio law.[11] Since we are declaring Pennsylvania law, as best we can, our conflicting decision

brings nothing more than an expressed difference on the law of two states. There is an Indiana appellate case which is in accord with the result we are reaching,[12] but it must be admitted that the corporation there was a one-man corporation and not the kind of business enterprise with which we are confronted in this litigation.

The absence of an "all fours" decision need not dismay us, however. There must always be a first time for every legal rule. That is the way the law grows. If the rule thus declared is bottomed solidly upon principles worked out before hand we can call its formulation not "dangerous innovation" but "healthy growth." Courts are understanding rules governing corporate activity better than they did a few decades ago. It has not been long since the question was fought out whether a corporation could sue or be sued in federal court.[13] Likewise, corporations used to be successful in maintaining the view that they could not be sued outside the state where they were chartered.[14]

. [10] What the merits of the plaintiff's case are, we have no idea. If, on the facts, he cannot prove that he is right, the inconvenience to the corporation will be no more than that of any other litigant who successfully defends a lawsuit. If, on the other hand, the plaintiff proves his case he is only getting what the law says he is entitled to have. It would be most unjust if

der this Chapter, subject to any restrictions contained in its Certificate of Incorporation, shall have power to declare and pay dividends upon the shares of its capital stock * * *."

9. See The Salton Sea Cases, 9 Cir., 1909, 172 F. 792, certiorari denied 215 U.S. 603, 30 S.Ct. 405, 54 L.Ed. 345. Another well-known example of equity's willingness to achieve the desired result by indirection is Lumley v. Wagner, 1 De G. M. & J. 604, 42 Eng.Rep. 687 (Ch. 1852).

10. For the rules in analogous situations, see Restatement, Conflict of Laws §§ 155, 158, 159, 183, 197 and Pa.Annot. thereto.

11. See Comment, 61 Harv.L.Rev. 1253 (1948), criticizing the Schuckman decision as "unnecessarily severe."

12. W. Q. O'Neall Co. v. O'Neall, 1940, 108 Ind.App. 116, 25 N.E.2d 656.

13. See Green, Corporations as Persons, Citizens, and Possessors of Liberty, 94 U. of Pa.L.Rev. (1946); McGovney, A Supreme Court Fiction, 56 Harv.L. Rev. 853, 1090, 1225 (1943).

14. "It is very true that a corporation can have no legal existence out of the boundaries of the sovereignty by which it is created. * * * It must dwell in the place of its creation, and cannot migrate to another sovereignty." Taney, C.J., in Bank of Augusta v. Earle, 1839, 13 Pet. 519, 588, 10 L.Ed. 274. See Goodrich Conflict of Laws § 76 (3d ed. 1949); Henderson, The Position of Foreign Corporations in American Constitutional Law, c. 5 (1928).

he could not prove that claim for the lack of a proper forum.

The judgment of the District Court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.