GINO TREVES, PETER G. TREVES, SUSAN BROCKMAN, SAMUEL I. POSEN, HUGO BAUER, JAMES J. DUANE, JR., and MARGARET W. DUANE, doing business under the firm name and style of JAMES J. DUANE & Co. and THOMAS B. HAND,
Plaintiffs,

*vs.*

DUNCAN C. MENZIES, J. PATRICK LANNAN, HUNTER S. MARSTON, H. IRVING PRATT, W. F. ROCKWELL, JR., LOUIS RUTHENBURG, A. LIGHTFOOT WALKER, ROBERT E. WALKER and JOHN H. WALL and SERVEL, INC., a Delaware corporation,
Defendants.

*New Castle, June 11, 1958.*

*Irving Morris,* Wilmington, and Gallop, Climenko & Gould and Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiffs.

*Aaron Finger,* Wilmington, and Brown, Wood, Fuller, Caldwell & Ivey, New York City, for defendant, Servel, Inc.

MARVEL, Vice-Chancellor: Plaintiffs, who claim to own 1,660 shares of cumulative preferred stock of the defendant, Servel, Inc., out of 45,600 such shares issued and outstanding, have brought what they term a class action in which they primarily seek to have the Court enforce in their favor a charter provision which, according to plaintiffs' contentions, entitles them now to be paid the full preferential payment due on such stock upon corporate liquidation. The unverified complaint alleges and the answer admits that most of the corporate defendants' assets having to do with its ordinary business have been [1] sold, but the parties differ as to the legal consequences of such sale insofar as the rights of preferred stockholders are concerned.

---

1. At the September 11, 1957 special stockholders' meeting called to consider the proposed sale, 74% of the preferred stock and 69% of the common voted. 73% of the preferred and 66% of the common approved the sale. The corporate charter requires approval by 66⅔% of the preferred stock outstanding for a sale of all or substantially all corporate property or business, clause Fourth (7) (c). Approximately fifteen million dollars in virtually liquid form are now held in the corporate treasury, and in addition the corporation has a large tax loss carry-forward.

The charter clause under which plaintiffs now seek preferential liquidation payments provides, "Fourth * * * (5) Upon any liquidation, dissolution or winding-up of the corporation, whether voluntary, or involuntary, the preferred stock * * * shall be entitled, before any distribution shall be made to the common stock * * * to be paid the full preferential amount or amounts fixed by the Board * * *." The clause concludes, "* * * Neither a consolidation nor merger of the corporation with or into any other corporation or corporations, nor the sale or all or substantially all of the assets of the corporation shall be deemed to be a liquidation, dissolution or winding-up within the meaning of this clause."

In a second cause of action plaintiffs ask that this Court require the corporation to pay them accrued and unpaid cumulative dividends out of a large capital surplus now resting in the corporate treasury as a result of the sale of the assets of the corporation following stockholder approval at the meeting called for such purpose last September, and, as a result of such dividends, cause 7,200 preferred shares to be redeemed from a sinking fund.

It appears from the papers before me that following the Korean War an unfavorable trend in Servel's business affairs developed which finally resulted in the decision to withdraw from the refrigeration and allied fields and enter a different type of business. At the end of the summer of 1957, management decided to seek stockholder approval of a proposed sale of assets and at the same time to inform stockholders of an intention of applying the cash realized from such sale to the purchase of another type of business. The existence of an $18,361,000 tax loss carry-forward, which can be annually deducted in varying amounts from annual earnings through the fiscal year 1961, makes the acquisition of a new business most desirable. Neither plaintiffs, nor other stockholders attacked the proposed sale of assets, the present suit being concerned with the consequences of such sale.

The complaint does not set forth verbatim the charter provisions which necessarily control plaintiffs' contractual relations with the defendant corporation, plaintiffs taking the position that the act of the

corporation in selling its assets raises an issue of fact, namely whether or not a liquidation, dissolution or winding up has actually occurred. They conclude that if such can be shown to have taken place, they are now entitled to preferential payments under the terms of the corporate charter and contend that this issue must necessarily be resolved by trial.

Servel, Inc. takes the position that there is no genuine issue of fact as to plaintiffs' contractual rights as preferred stockholders as set forth in the corporate charter, that there are no other issues properly before the Court on either cause of action, and attached to its motion for summary judgment of dismissal of both causes of action is an affidavit of the president of Servel, Inc. concerning stockholder action on the sale of assets, a composite copy of the corporate charter, the proxy statement sent to stockholders in connection with the September 11, 1957 special meeting and the annual report to stockholders for the fiscal year ended October 31, 1957.

Plaintiffs do not question these documents as such but contend that as holders of preferred stock they will be able to establish that they are entitled to be repaid their invested funds out of the substantially liquid assets now held in the corporate treasury after proving that a voluntary corporate liquidation has in fact taken place, and that in any event on their second cause of action they are at least entitled to be paid back dividends (which have accrued but not been paid since 1954) out of capital surplus.

In support of such causes of action the Treves affidavit charges that the proxy statement of August 8, 1957 was misleading and that the Servel stockholders "* * * have never been asked to specifically vote upon the entry of Servel into new or different business ventures * * *" The amended complaint charges that the corporate directors have acted in bad faith and that plaintiffs are clearly entitled to receive dividends out of the some five million dollars surplus without director approval.

In my opinion the proxy statement informed the stock-holders fully and explicitly as to what a favorable vote on the proposed sale of assets would entail and was not misleading, and I conclude that there is no genuine issue of fact insofar as plaintiffs' claim to preferential payments on dissolution is concerned. The corporate charter, which is the basic contract between the corporation and its stock-holders and fixes their mutual rights and duties as to issued stock, specifically provides that a sale of all or substantially all of the corporate assets is not to be deemed a liquidation, dissolution or winding up within the meaning of charter clause Fourth (5). Summary judgment of dismissal as to plaintiffs' first cause of action is granted.

In the second cause of action the individual defendants are charged with having violated their fiduciary duty to the preferred stockholders in failing to declare dividends and to redeem such stock through a sinking fund. It is further contended in an unverified amendment to the complaint that the actions of such defendants "* * * have been aimed at increasing the equity of the holders of the common stock, and of the interests of certain officers and directors and without giving due and proper heed or consideration to the rights of the holders of the preferred stock. This was not the result of unbiased judgment on their part but was in their self-interest * * *" The Treves affidavit, which presumably was filed to refute the sworn allegations of the Menzies' affidavit, further alleges that since May 1954 the director defendants have failed to consider the advisability of declaring a preferred dividend and that such "failure to consider" constitutes an abuse of discretion. However, it appears from the allegations of the Treves and Wolf affidavits that management has known of plaintiffs' demands at least since the annual stockholders meeting of February 27, 1958.

As to when such dividends are to be paid obviously rests in the honest discretion of the directors. Thus the basic question for me to decide at this juncture is simply do the affidavits before me raise a real factual issue as to whether or not such discretion was in fact properly exercised. Clause (Fourth)(3) of the charter provides: "* * * The preferred stock of each series shall be entitled to receive, and the

corporation shall be bound to pay thereon, but only as and when declared by the Board of Directors, out of any funds of the corporation at the time legally available therefore, cumulative cash dividends * * *"

It is implicit in the proxy statement and annual report before me that the defendant directors deem it wise that all available cash be preserved to the extent possible for the purchase of a new business, and I do not think the absence from the record before me of a specific vote or discussion of the dividend problem casts any shadow on the obvious fact that the directors have exercised their business judgment in preserving a strong cash position.

These stockholder plaintiffs are not creditors and dividends are not due them until such dividends are declared. Plaintiffs look upon themselves as money lenders rather than investors, a concept at odds with modern corporate law principles, *Federal United Corporation v. Havender*, 24 *Del.Ch.* 318, 11 *A.2d* 331.

It must be noted that the present complaint hardly states the type of alleged director abuse appearing at the pleading stage in *Kroese v. General Steel Castings Corporation*, 3 *Cir.*, 179 *F.2d* 760, 762, 15 *A.L.R.2d* 1117, in which it was alleged that the directors were expanding production facilities, at the expense of preferred stockholders, "* * * in order to assure the four major common shareholders of an adequate supply of its product." On the other hand the mere showing of the existence of an asset from which a dividend might be declared has been declared to be insufficient to induce this Court to compel a dividend to be paid. The complaint here does not contain specific allegations which might lead to a demonstration that the "* * * corporation's affairs are in a condition justifying the declaration of the dividend as a matter of prudent business judgment and that the withholding of it is explicable only on the theory of an oppressive or fraudulent abuse of discretion." *Eshleman v. Keenan*, 22 *Del.Ch.* 82, 194 *A.* 40, and the Treves affidavit, as noted, says nothing which casts any real doubt on what clearly appears to have been the exercise of honest business judgment on the part of the directors.

It appears from the Menzies affidavit and its exhibits that not only were all stockholders fully informed about the proposed sale of assets but that they were also put on notice as to the proposed purchase of another business enterprise and the possible need of "additional funds" for such purpose. So informed the stockholders approved the sale of assets by more than the required vote. It must be assumed that the stockholders in giving the required approval for the sale accepted the consequences necessarily flowing from the drastic action which they had sanctioned, namely a period of corporate inactivity including a further suspension of preferred dividends and consequently of preferred stock redemption, until a new type of business might be found and purchased. Stockholder approval of a general plan places a heavy burden on an objector, *Kaufman* v. *Shoenberg*, 33 *Del.Ch.* 211, 91 *A.2d* 786. Finally, it must be noted that continued default in preferred dividends has resulted in the election of four directors by the preferred stockholders, clause Fourth (6) of the charter.

While it may well be that a long drawn out and unjustified freezing of liquid assets by corporate management might later justify intervention by this Court in the affairs of Servel, Inc. in order to protect the preferred stockholders' equity, plaintiffs on the present record have failed to make a showing that they are entitled to such drastic action now. Plaintiffs' dividends will continue to accrue and accumulate at the rate of $4.50 per share per annum according to the terms of the preferred stockholders' contract with the corporation.

Servel, Inc.'s motion for summary judgment of dismissal as to plaintiffs' second cause of action is also granted.

Order on notice.