194 A.2d 846 (1963)
Kenneth V. LEIBERT, Plaintiff,
v.
GRINNELL CORPORATION, a corporation of the State of Delaware, and Automatic Fire Alarm Company of Delaware, a corporation of the State of Delaware, Defendants.
Court of Chancery of Delaware, New Castle.
October 4, 1963.
Arthur G. Logan (of Logan & Boggs), Wilmington, and Gustave B. Garfield, New York City, for plaintiff.
Henry M. Canby and Richard J. Abrams (of Richards, Layton & Finger), Wilmington, for defendants.
MARVEL, Vice Chancellor.
Plaintiff, a holder of common stock of Automatic Fire Alarm Company of Delaware, alleges in his complaint that the defendant Grinnell Corporation, which in 1949 acquired 50% of the outstanding stock of the defendant Automatic Fire Alarm of Delaware and thereafter acquired additional shares, has from since *847 at least as long ago as 1950 so controlled the affairs of the latter defendant and its subsidiary, Automatic Fire Alarm Company of New York, as to cause such corporations not only improperly to accumulate their earnings to the injury of plaintiff and other stockholders but also, as hereinafter set forth, as to otherwise damage the stockholders of such corporations in a manner which warrants the appointment of a liquidating receiver for Automatic Fire Alarm of Delaware. He contends and it is admitted that since 1950 a majority of the members of the board of directors of Automatic Fire Alarm of Delaware have been directors and officers of Grinnell, and for many years a majority of the members of the board of Automatic Fire Alarm of New York have simultaneously been officers and directors of Grinnell. Insofar as plaintiff seeks relief for the stockholders of Automatic Fire Alarm of New York he apparently proceeds on a double derivative theory. Automatic Fire Alarm of Delaware is a holding company, holding approximately 99% of the stock of Automatic Fire Alarm of New York and 9% of the stock of Grinnell Corporation. Grinnell Corporation owns no stock of Automatic Fire Alarm of New York.
Derivative relief prayed for in the action, which is allegedly brought representatively as well as derivatively for the primary benefit of the stockholders of Automatic Fire Alarm of Delaware (although the complaint does not segregate these two theories of action), is an order requiring Grinnell Corporation to account for the losses it has allegedly caused Automatic Fire Alarm of Delaware. Relying on the language contained in the corporate charter as well as on those general principles of corporate law which govern the conduct of directors, plaintiff also prays for an order directing the latter corporation to distribute to its stockholders all earnings received by it from securities held in its capacity as a holding corporation. Plaintiff further asks that Grinnell and Automatic Fire Alarm of Delaware be compelled to cause Automatic Fire Alarm of New York to distribute to its stockholders "* * * all of its earned surplus in excess of an amount the Court determines is necessary to retain for the proper conduct of the business affairs of Automatic Fire Alarm (AFA NY) * * *". Finally, as noted above, the naming of a receiver to liquidate Automatic Fire Alarm of Delaware is prayed for.
The basic theory of the complaint is that inasmuch as Automatic Fire Alarm of Delaware was incorporated in 1920 for a limited and since unchanged purpose, namely to hold securities of other corporations and "* * * to receive the dividends, interest and income thereon, and to distribute the same to * * *" its stockholders, such corporation may not retain a substantial portion of its earnings in the form of earned surplus. Plaintiff thus contends that this charter language by its express terms has required a virtually automatic distribution to stockholders of current earnings in the form of dividends and that there has been no corporate power over the years to support a policy of accumulating all but a relatively small amount of such earnings. The complaint goes on to allege that in addition to causing the payment of dividends due and payable by Automatic Fire Alarm of Delaware to be unlawfully withheld in violation of an express charter provision and in derogation of the fiduciary duty owed by corporate directors to their stockholders, the defendant Grinnell Corporation, by manipulation of the market prices of the stock of both the Delaware and New York Automatic Fire Alarm companies and by subjecting such corporations to possible suits for violation of the Internal Revenue Code because of such unreasonable and improper accumulations of earnings, has further injured such corporations with resulting benefit to Grinnell. Thus it is alleged that between 1951 and the end of 1959 Automatic Fire Alarm of New York was caused to increase its earned surplus from $303,815 to $1,769,396, and that in like fashion *848 by December 31, 1959, Automatic Fire Alarm of Delaware had been caused to acquire an accumulated surplus of $1,303,225. During this same period, according to plaintiff, dividends paid out by said companies were held to a bare minimum. It is also alleged that Grinnell has caused Automatic Fire Alarm of New York to submit to an unfair agreement under the terms of which the latter is required to pay over to Grinnell 17% of moneys earned by Automatic Fire Alarm of New York from leased equipment furnished by it for sprinkler systems installed by Grinnell. All of these alleged acts, according to the complaint, unnaturally depressed the market price for the stock of Automatic Fire Alarm of Delaware following which Grinnell instituted a program on its part to increase its holdings of Automatic Fire Alarm stock of Delaware to 89%, so that as of March 19, 1959 it owned a total of 55,176 shares of such corporation out of 62,061 shares issued and outstanding. Demand for the remedying of the acts complained of, including the setting aside of an arrangement whereby stock dividends on Grinnell stock held by Automatic Fire Alarm of Delaware are not distributed as required by such latter corporation's charter but rather used to vote for the retention of Grinnell's entrenched management, being allegedly fruitless, plaintiff asks that the wrongs imposed by Grinnell on Automatic Fire Alarm of Delaware and its New York subsidiary be rectified by Court order.
Answering the complaint, defendants deny what they deem to be its conclusory allegations and set forth the affirmative defenses of laches, statute of limitations, acquiescence and estoppel. Plaintiff's deposition and those of the presidents of the defendant corporations have been taken and certain documents furnished by defendants have by stipulation been made part of the record. These papers together with defendants' affidavits in support of their motion for summary judgment and plaintiff's affidavits in support of his cross motion for partial summary judgment on his prayers for an order requiring the distribution of dividends and the appointment of a receiver for Automatic Fire Alarm of Delaware make up the record before me.
In 1907, Grinnell Corporation, then known as General Fire Extinguisher Company and a pioneer in the field of fire alarm protection, entered into a contract with American District Telegraph Company and Automatic Fire Protection Company under the terms of which Grinnell agreed in conjunction with Automatic Fire Protection Company to service basic water sprinkler equipment to be furnished by Grinnell to American District Telegraph Company (additional devices for central station use being furnished by Automatic Fire Protection Company) until February 18, 1954, in return for which undertakings the latter corporation agreed to pay Grinnell and Automatic Fire Protection Company each 25% of the revenues collected from the users of such equipment.
At the time this contract was negotiated American District Telegraph Company, whose interest in the 1907 contract was not acquired by Automatic Fire Alarm of New York until 1953, was in no way under the control of Grinnell's predecessor, American District Telegraph Company then being under the control of Western Union as it continued to be until July 1953. Prior to such latter date, however, Grinnell, which continued to hold title to the fire prevention equipment furnished under the contract during the intervening years, entered into arms' length negotiations with American District Telegraph as a result of which a firm agreement had been reached by December 1952 under the terms of which Grinnell agreed to sell to the latter all of its installed fire alarm devices, the buyer agreeing that after February 18, 1954, the date of the expiration of the 1907 contract, it would pay to Grinnell 17½% of its earnings derived from what had been the Grinnell equipment calculated at the price level for services provided by such equipment as of the February 1954 date. Using the terms of the sale of equipment to American *849 District Telegraph as a guide for fair dealing in order to avoid the vices of self-dealing implicit in Grinnell's position as the majority stockholder of Automatic Fire Alarm of Delaware, Grinnell then renegotiated another 1907 contract originally made with Automatic Fire Alarm of New York under the terms of which such latter corporation acquired title to its Grinnell installed equipment on the same terms which had been negotiated at arms' length with American District Telegraph at a time when, as noted above, it was independent of Grinnell.
Defendants have thoroughly documented the steps whereby the terms of such new contract were arrived at, and plaintiff, in my opinion, has failed to present facts which cast any real doubt on the fairness of the renewal contract entered into between Grinnell and Automatic Fire Alarm of New York. The 1907 contract provided that Grinnell would furnish rather than sell its major fire control equipment, the agreement further providing that Grinnell would also supply repair services and necessary replacement installations throughout the life of the contract. In point of fact there would have been no need for negotiating a new contract between Grinnnell and American District Telegraph as the expiration of their 1907 contract neared had a sale of basic equipment been intended in the original transaction. Significantly, additional devices over and above the basic fire alarm equipment leased in the 1907 contract were in fact sold to American District Telegraph under the terms of such agreement. Finally, plaintiff's contentions concerning the effect of Section 100 of the Personal Property Act of New York on the transaction in question can not vary the clear import of the language of the 1907 contract.
The purpose of summary judgment is to obviate a trial when the material facts are not in dispute. Here plaintiff has not, in my opinion, cast any real doubt on the accuracy of the documented facts adduced by defendants, his affidavits filed in support of his motion and in opposition to defendants', expressing dissatisfaction and disagreement with Grinnell's business policies rather than advancing any cogent facts in support of his charges of fraud and gross mismanagement. Compare Lewis v. Hat Corporation of America, 38 Del.Ch. 313, 150 A.2d 750. Insofar as plaintiff seeks relief on the theory that the agreement of Automatic Fire Alarm of New York to pay Grinnell 17½% from moneys earned from equipment sold to it by Grinnell constituted a gift of assets, he has again failed effectively to raise a material question of fact as to the fairness of the December 24, 1953 agreement, it being established on the record before me that because of the manner in which it was negotiated the 1953 agreement was a bona fide transaction. Next, plaintiff's contentions as to the special situation arising out of Automatic Fire Alarm of Delaware's holding of Grinnell stock on which stock dividends have been paid are wide of the mark. The Delaware holding company is not only admittedly controlled by Grinnell but was expressly organized to be a holding company, and, as will be discussed later in this opinion, it is under no duty because of the language of Article Third of its charter to make automatic distributions of its income. Furthermore, the operating expenses of Automatic Fire Alarm of Delaware have been held to a minimum. Its officers are paid no salaries although about $1,000 is paid out annually in directors' fees. Finally, it is apparent from the records before me that purchases of some 7,000 shares of stock of Automatic Fire Alarm of Delaware by Grinnell since 1949 have been carried out in an orderly and normal manner, no such purchases having been made since 1956.
Turning to a consideration of plaintiff's basic grievance, namely the allegedly improper accumulations at Grinnell's insistence of large earned surpluses by the Automatic Fire Alarm companies, it appears that when American Fire Alarm Company of Delaware was incorporated in 1920, the section of the General Corporation Law *850 which sets forth what a certificate of incorporation should contain, namely § 1919 of the Revised Code of Delaware 1915, provided as it does now,[1] as follows:
"3. The nature of the business, or objects or purposes proposed to be transacted, promoted or carried on."
Plaintiff relying on the language[2] used in the charter pursuant to such statutory requirement argues that inasmuch as Article Third of the corporate charter is the only article adopted pursuant to the provisions of § 1919 of the Revised Code of Delaware 1915, a reading of it will disclose an intent to follow an extremely narrow corporate purpose. He also points out that notwithstanding the opportunity afforded management to broaden the language of such article over the intervening years, no change has been made and that accordingly the directors of the corporation have no choice but to channel corporate earnings directly to the stockholders after the payment of operating expenses.
Ignoring the fact that the cited section of the Delaware Corporation Law is concerned with objects and purposes and not with powers as such, plaintiff further overlooks the fact that § 1917 of the Revised Code of Delaware 1915[3] (the additional powers section of the Corporation Law in force at the time) provided that:
"In addition to the powers enumerated in the second section of this Chapter (§ 1916, Powers), every corporation, its officers, directors and stockholders, shall possess and exercise all the powers and privileges contained in this Chapter, and the powers expressly given in its charter or in its certificate under which it was incorporated, so far as the same are necessary or convenient to the attainment of the objects set forth in such charter or certificate of incorporation * *".
Thus it is clear that a Delaware corporation, except perhaps in those instances when mandatory restrictive language is deliberately incorporated into its charter, is liberally endowed by the General Corporation Law of Delaware not only with express specific powers but also with express general powers (see Weinberg v. Baltimore Brick Co., 35 Del.Ch. 225, 114 A.2d 812, affirming 34 Del.Ch. 586, 108 A.2d 81), and the narrow reading of defendant's charter made by plaintiff is neither fair nor reasonable. Compare Standard Power & Light Co. v. Investment Associates, Inc., 29 Del. Ch. 593, 51 A.2d 572, affirming 29 Del.Ch. 225, 48 A.2d 501. By the same token, because of the statutory powers granted all Delaware corporations a reasonable reading of the provision of Article Third pertaining to the right of Automatic Fire Alarm of Delaware to acquire securities in other corporations "* * and to issue in exchange therefore its own stocks * *" compels a conclusion that such provision is not exclusive. Securities of other corporations may, of course, be acquired by a Delaware corporation by lawful means such as by purchase for cash.
*851 Plaintiff, however, citing Lydia Pinkham Medicine Co. v. Gove, 303 Mass. 1, 20 N.E. 2d 482 and Crocker v. Waltham Watch Co., 315 Mass. 397, 53 N.E.2d 230, takes the position that the discretionary power normally held by corporate directors over the payment of dividends, Treves v. Menzies, (Del.Ch.) 142 A.2d 520, can be taken away by a clear charter provision or by a by-law and that such has clearly been done in the case at bar.
In the Lydia Pinkham case a corporate by-law set up a mandatory arrangement for the payment of dividends quite unlike the language in dispute in the case at bar, such by-law providing that "* * * [t]he net surplus of the company shall not be accumulated or maintained to an amount exceeding $1,000,000. Until the net surplus is reduced to $1,000,000 dividends shall be declared and paid to the stockholders * * *" at a fixed rate out of current net earnings, and, if necessary, net surplus.
Also in the Waltham Watch case the agreement of association in issue specifically required that one fifth of corporate net earnings of the preceding year be declared and paid out as a dividend to holders of common stock provided the company's capital would not be impaired by such payment.
Concededly such contractual undertakings between a corporation and its stockholders expressed in mandatory terms can be enforced by a stockholder suing for personal recovery of what is due him when it is established that a company's net surplus or net earnings, as the case may be, calls for a dividend pursuant to such a charter or by-law undertaking. In the case at bar such a mandatory direction is not found in the papers before me, and plaintiff and others whom he purports to represent are not entitled to additional dividends on the basis of the language relied on, namely that contained in Article Third of the certificate of incorporation.
May plaintiff, however, be granted the relief he seeks on the theory that dividends have been allowed to accumulate to such an unwarranted degree that management is in effect guilty of fraud or gross mismanagement?
From 1950 through 1961 Automatic Fire Alarm of Delaware paid out dividends totalling $1,045,560 and increased its earned surplus by a slightly larger amount. During the same period dividends totalling $491,264 were distributed by Automatic Fire Alarm of New York while its earned surplus was increased by over $1,500,000. However, plaintiff has not, of course, asked for the appointment of a receiver for this New York corporation. In addition, as noted earlier, Automatic Fire Alarm of Delaware has received Grinnell stock dividends on stock of such company held by it.
Plaintiff's first argument in support of his demand for a distribution of dividends is that 26 U.S.C. § 102 imposes a penalty on accumulations of surplus beyond the reasonable needs of a business and that the risk of such a penalty may be avoided only if the distribution prayed for by plaintiff is ordered.
The purpose of the cited section of the Internal Revenue Law is apparently to forestall tax evasion by individuals who can arrange to have corporate earnings, which would normally be paid out to them, unreasonably accumulated in a corporate treasury, the tax in question being levied against accumulated taxable income which consists of net taxable income after the payment of federal income taxes, Moscowitz v. Bantrell (Sup.Ct.Del.) 190 A.2d 749. There has been no showing here, however, of a plan of tax avoidance designed to benefit individuals. More to the point, the Internal Revenue Service, the agency charged with the enforcement of such statute, has not, according to the record before me, taken any action under the statute, the returns of Automatic Fire Alarm of Delaware having been audited through 1959. While earned surplus of Automatic Fire Alarm of Delaware has increased from $220,704 in *852 1950 to $1,444,559 in 1961, the largest annual addition to surplus, namely $166,175, was made in 1950 as opposed to $147,963 in 1961. Furthermore, total dividends paid by said corporation have increased from $75,960 in 1950 to $99,032 in 1961.
It is established that this Court will not indirectly enforce a provision of federal law, Investment Associates, Inc. v. Standard Power & Light Co., supra. However, the basic question remains, has the accumulation of earnings here involved been so great as to constitute an oppressive or fraudulent abuse of discretion on the part of corporate directors, Eshleman v. Keenan, 22 Del.Ch. 82, 194 A. 40, aff'd 23 Del.Ch. 234, 2 A.2d 904, 120 A.L.R. 227? Excluding the Grinnell and Automatic Fire Alarm stock of New York held by Automatic Fire Alarm of Delaware, both Automatic Fire Alarm companies have about $3,500,000 available for expansion purposes. This amount is approximately what would be needed to purchase Central Station Signals, a company which defendants have sought to acquire over the past decade for a fair price on a basis which would not involve a heavy tax imposition. Negotiations for the purchase of the stock of such company have been held in abeyance recently because of Government charges of monopoly and obviously will not be renewed while an anti-trust action filed against Grinnell Corporation and its subsidiaries in the District Court of the United States for the District of Rhode Island is pending. This suit, which was filed on April 13, 1961, charges that Grinnell controls 136 central station electric protection services out of a total of 170 central stations existing in the United States. Professing confidence in the ultimate outcome of such suit, Grinnell nonetheless insists that even were such anti-trust action to be successfully prosecuted that the surplus funds questioned by plaintiff will be needed for types of future expansion which would not involve possible violations of the anti-trust laws. Defendants insist for instance that such funds would be sorely needed in order to compete successfully with an independent American District Telegraph Company.
In a situation where a high degree of proof would be required at trial to overcome the business judgment rule, particularly in a situation involving an investment company as opposed to a manufacturing company, I am satisfied that plaintiff has not submitted, in support of his motion and in opposition to defendants' motion, any facts which cast any doubt on defendants' right to judgment now. In other words, plaintiff has failed to demonstrate that the directors of the defendant corporations should have in the exercise of prudent business judgment caused the payment of dividends to be made as prayed for by plaintiff and further that the withholding of payment of such dividends can be explained "* * * only on the theory of an oppressive or fraudulent abuse of discretion." Eshleman v. Keenan, supra. It necessarily follows that the extreme relief of the appointment of a receiver to wind up the affairs of Automatic Fire Alarm of Delaware, a clearly solvent holding corporation, should not be granted, Berwald v. Mission Development Company (Sup.Ct. Del.) 185 A.2d 480, and Hall v. John S. Isaacs & Sons Farms, Inc., 37 Del.Ch. 530, 146 A.2d 602, aff'd (Sup.Ct.Del.) 163 A.2d 288. In passing it might be noted that an analogy can be drawn between plaintiff's grievances here and those aired in Abelow v. Midstates Oil Corporation (Sup. Ct.Del.) 189 A.2d 675. Plaintiff cannot equate his position with that of the stockholders of Grinnell Corporation, the parent corporation.
In view of the conclusions hereinabove reached it is unnecessary to consider the merits of the defenses of laches, estoppel, acquiescence and statute of limitations, viewed in the light of plaintiff's actual or constructive knowledge of the matters complained of over the period of more than ten years which elapsed between the time he became a stockholder of Automatic Fire *853 Alarm of Delaware and the filing of his complaint. Plaintiff's motion for partial summary judgment is denied and defendants' motion for summary judgment is granted.
Order on notice.
NOTES
[1] This section has been retained substantially verbatim as § 102(a) (3) of Title 8 Del.C.
[2] "Third: The purpose or object of the corporation and the business proposed to be transacted is to own and hold the stocks, bonds and other investment securities of other corporations to receive the dividends, interest and income therein, and to distribute the same to the stockholders of this company.

"To acquire, own and hold the stocks, bonds and other investment securities and evidences of indebtedness of any corporation, domestic or foreign, and to issue in exchange therefore its own stocks, the purport and intent of the powers herein defined being that this Company is organized merely for the purpose of owning and holding of the property and distribution of its avails, and doing only such acts as are necessary to the maintenance of its corporate existence and the private management of its purely internal affairs."
[3] Now § 121 of Title 8 Del.C.